**In re Charles Richard SNOW, Janet Lee Snow, Debtor.**

**Charles Richard SNOW, Janet Lee Snow, Appellees,**

**v.**

**Richard GREEN, Appellant.**

**Bankruptcy No. 686–01203–C. Civ. A. No. 87–0035–C.**

United States District Court, W.D. Virginia, Charlottesville Division.

Oct. 7, 1988.

---

W. Stephen Scott, Charlottesville, Va., for appellees.

Leroy R. Hamlett, Jr., Charlottesville, Va., trustee.

C. Wavery Parker, Stanardsville, Va., for appellant.

## MEMORANDUM OPINION

MICHAEL, District Judge.

This matter is before the court on an appeal from a decision of the bankruptcy court for this district allowing appellees to avoid the fixing of a judicial lien on property claimed as exempt under the Virginia homestead exemption. For the reasons elaborated below, that decision of the bankruptcy court is reversed.

### A. *Procedural Posture*

Appellant Green obtained a state court judgment against appellee debtors, the Snows, on October 15, 1986, for unpaid rent due appellant. *In re Snow,* 71 B.R. 186, 187 (Bankr.W.D.Va.1987). In order to collect on his judgment, appellant obtained a writ of *fieri facias* against items of personal property of the appellees on October 29, 1986. *Id.* By obtaining this writ, a judicial lien upon the appellees' property was created. Virginia Code § 8.01-478 (1984). On November 10, 1986, pursuant to Virginia Code § 34-4, appellees recorded a Homestead Deed for personal property. Two days later, appellees filed a joint petition declaring Chapter 7 bankruptcy. *Id.* This matter was heard in bankruptcy court as the appellees attempted to avoid the previously executed judicial lien by claiming that the property against which that writ was levied was exempt under Virginia's homestead provision. Virginia Code § 34-4 (1984). Appellees sought to avoid the judicial lien by invoking the lien avoidance procedure found in 11 U.S.C. § 522(f)(1) (1987). Appellant argued that, because Virginia recognizes exceptions to the homestead exemption for certain kinds of debt, e.g., debts for rent, the debtors cannot successfully avoid this judicial lien. Virginia Code § 34-5 (1984). The bankruptcy court ruled that the debtors could successfully avoid the lien, finding that there was "no occasion for holding that Va.Code § 34-5(5), declaring non-exempt property encumbered by a judicial lien arising out of a claim for rent, precludes the use of the lien avoidance provisions of § 522(f)(1)." *In re Snow,* 71 B.R. at 189.

### B. *Statutory Background*

The Bankruptcy Reform Act of 1978 created a series of exemptions for those entering bankruptcy. 11 U.S.C. § 522. However, paragraph (b)(1) also gives each state the power to opt out of that structure of exemptions and to replace the federal scheme with its own set of exemptions. This "opt out" provision was the result of legislative compromise. The House of Representatives wanted to create a structure of exemptions where the debtor could

choose between the federal exemption structure and those exemptions afforded by the debtor's state law. On the other hand, the Senate preferred to restrict all debtors to only those exemptions afforded them under their state law. Haines, *Section 522's Opt Out Clause: Debtors' Bankruptcy Exemptions in a Sorry State*, 1983 Ariz.St.L.J. 1, 5–10; Klee, *Legislative History of the New Bankruptcy Law*, 28 De Paul L.Rev. 941, 952–57 (1979); Ulrich, *How Bankruptcy Exemptions Work: Virginia as an Illustration of Why The "Opt Out" Clause Was A Bad Idea*, 8 G.M.U.L.Rev. 1, 2 (1985).

Virginia is one of the majority of states which have chosen to opt out and to restrict their domiciliaries to the structure of exemptions provided by the State Code. Virginia Code § 34–3.1 (1984). Within a year after the passage of the Bankruptcy Reform Act, the General Assembly for the Commonwealth of Virginia opted out of what are "the concededly more liberal federal exemptions." *In Re Boyd*, 11 B.R. 690, 693 (Bankr.W.D.VA.1981). One of the exemptions to which debtors have recourse for their protection in Virginia is the homestead exemption. This provision provides, in relevant part,

> Every householder or head of a family residing in this State shall be entitled ... to hold exempt from levy, seizure, garnishment or sale under any execution, order or process issued on any demand for a debt or liability on contract, his real and personal property, or either, to be selected by him, including money and debts due him, to the value of not exceeding $5,000.

Va.Code § 34–4 (1984). The Virginia homestead exemption is qualified by certain statutorily created exceptions. For example, under the terms of the Statute, the homestead exemption cannot protect the claimed property from an execution order or other form of process growing out of a demand for rent. Va.Code § 34–5(5) (1984).[1]

Section 522 of the Bankruptcy Code also creates a mechanism under which a debtor can avoid the imposition of a judicial lien. That section provides, in pertinent part,

> Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is ... a judicial lien. . . .

11 U.S.C. § 522(f)(1) (1987). It is this provision upon which appellees rely in order to avoid the lien earlier attached on their property claimed under the Virginia homestead exemption.

## C. The Interaction Between The Virginia and Federal Provisions

By the plain language of the statute, the Virginia legislature clearly intended both to create a homestead exemption and to abrogate that exemption for certain species of claims by creditors. Va.Code §§ 34–4, 34–5. Counterpoised to that scheme of exemption and exceptions, § 522(f)(1) of the Bankruptcy Code creates a mechanism whereby debtors can avoid liens on property which would have otherwise been exempted, except for that lien. 11 U.S.C. § 522(f)(1). There is the potential for an apparent clash between state and federal bankruptcy provisions. Certainly conflict can develop between the property which a debtor would seek to include under the Virginia homestead exemption and the kinds of claims which the Virginia legislature authorized to break through that exemption. *Epperley v. Woodyard*, 4 B.R. 124, 127 (Bankr.W.D. Va.1980) The Fourth Circuit has held that if the clash or conflict is one between federal and state bankruptcy provisions then the federal provision must prevail.

> Because Congress has the power under the Constitution to establish uniform bankruptcy laws, U.S. Const. Art. 1, § 8, and has enacted a specific provision for exemptions, 11 U.S.C. § 522, we must adopt an interpretation of Virginia's law

---

**1.** The scope of Virginia's homestead exemption has been criticized as being woefully inadequate in the face of modern economic conditions.

Note, *The Failure of the Virginia Exemption Plan*, 21 W.M. & Mary L.Rev. 851, 871 (1980).

that does not conflict with the Act's exemption provision.

*Cheeseman v. Nachman,* 656 F.2d 60, 63 (4th Cir.1981) (citation omitted).

■ It is important to distinguish between subsection (b) of 11 U.S.C. § 522 which provides for federal exemptions and allows states to opt out of the federal exemption scheme, and to put in place the particular exemption scheme of the state, and subsection (f) which creates the mechanism of lien avoidance. The opt out power of the states applies to subsection (b) and not to subsection (f).[2] States cannot opt out of the lien avoidance mechanism. However, the lien avoidance mechanism refers back to the structure of exemptions as defined in subsection (b), whether that structure is derived directly from the federal provisions or from the state provisions which are substituted for those federal provisions. When one examines the interaction between subsections (b) and (f), it is evident that this ostensible conflict between exceptions to the homestead exemption and the lien avoidance provision is only an apparent or facial conflict, one which exists because the bankruptcy court below did not fully appreciate the full scope of the Virginia homestead exemption. The court below fit an incomplete state exemption structure into the niche provided in subsection (b).

■ The bankruptcy court below read this case as involving a clash between claims growing out of the federal lien avoidance procedure and the exceptions to the Virginia homestead exemption and thus saw its charge as having to vindicate one claim or the other. That court resolved the perceived conflict by ruling that the lien avoidance procedure of § 522(f) negated the exception, in this case for rent, to Virginia's homestead exemption. The bankruptcy court concluded that

> The use of the phrase 'would have been entitled' denotes a condition contrary to fact. Thus, the court reads § 522(f) as permitting the debtor to avoid a lien if the lien impairs an exemption the debtor could claim under state [law] *but for* the lien.

*In re Snow,* 71 B.R. at 188 (emphasis in original). The decision of the bankruptcy court misidentifies what will count as the relevant "condition contrary to fact." If one reads the "condition contrary to fact" clause of § 522(f) as broadly as does the court below, then, under that court's analysis, the lien avoidance procedure seemingly would sweep in every exception to the homestead exemption under state law and would threaten to render those exceptions a null set. When exceptions to exemptions are defined by the type of claim allowed, then, by their very definition, they would always be vulnerable to negation by the lien avoidance procedure as construed by the bankruptcy court below.

Once again, the difficulty in the interpretation of the bankruptcy court below is that it misreads the scope of the Virginia homestead exemption. In effect, the court below takes the Virginia homestead exemption *simpliciter* to be encompassed only by Virginia Code § 34–4 and lops off the exceptions enumerated in § 34–5. That court has adopted a linear view of the way the homestead exemption process works. Presumably, under the bankruptcy court's interpretation, a debtor claims certain property under the homestead exemption as a discrete action. Only after the dust has settled from that process of claiming, does one then turn to look at the types of claims advanced by a creditor under the exceptions to that exemption. The court below interposed the "condition contrary to fact" gloss as a trip-wire between these two steps and thus wedges the lien avoidance procedure of 11 U.S.C. § 522(f) between §§ 34–4 and 34–5 of the Virginia Code.

However, the problem with the interpretation below is that it presents an incomplete picture of the Virginia homestead exemption. It is not the case that the exemption exists pristine, without exception, pervasive, and discrete and absolute, and that

---

**2.** As a district court in the Eastern District of Virginia observed, "The power to avoid those interests contained in § 522(f) indeed operates independently of a state's choice regarding its exemption scheme." *O'Malley v. Rapidan River Farm,* 24 B.R. 900, 903 (E.D.Va.1982).

then, only further down this imagined linear continuum, does one encounter the question of exceptions and their relation to the lien avoidance procedure. Rather, it is the case that the Virginia homestead exemption, taken as a whole, includes both the universe of what a debtor can claim as an exemption and *the exceptions to what can be claimed under that exemption.* Perhaps an appropriate, if very informal, metaphor to use in describing the Virginia homestead exemption is to compare it to a wedge of Swiss cheese. Just as the entirety of the wedge is composed of both the cheese and the holes, the entirety of the Virginia homestead exemption is composed both of the substantive provision allowing a debtor to exempt certain property and the exceptions to that exemption which, in this court's metaphor, constitute the holes. Properly understood, the holes are a part of that wedge of cheese and one takes that wedge subject to the holes.[3]

Therefore, in the case before us, the "condition contrary to fact" mechanism to which the court below refers actually cannot come into play, for the appellees in this case cannot point to an exemption to which they would otherwise have been entitled for lien avoidance purposes, because one natural chink or hole in the homestead exemption protection which they claim is the exception for claims for rent. When a debtor claims under the homestead exemption he claims with all the exceptions to that exemption implied by that claim.[4] The exemption, taken in its entirety, includes those exceptions. To hold otherwise would eviscerate virtually all instances under which the exceptions to the Virginia homestead exemption could exist, for a debtor

could invoke the doctrine of a "condition contrary to fact" as espoused by the court below and say that "but for this claim (e.g., for rent, for taxes, or for services rendered by a mechanic) this property would be exempt and, therefore, it is exempt."

In point of fact, in several instances bankruptcy courts in Virginia have interpreted the Virginia homestead exemption to include both the cheese and the holes and, thus, have recognized the vitality of creditor claims under the exceptions to the homestead exemption provided in § 34–5 of the Virginia Code. *In re Shines*, 39 B.R. 879 (Bankr.E.D.Va.1984); *In re Barnes*, 29 B.R. 677 (Bankr.W.D.Va.1983). In both of these cases a debtor sought to protect wages from garnishment under the provisions of the homestead exemption, but in both cases a creditor was allowed to reach those wages to satisfy a debt for rent. In the earlier case, the bankruptcy court concluded that:

> By virtue of Va.Code § 34–3.1, Virginia has excluded itself from the federal exemptions provided in § 522 and consequently, the exemption statutes contained in the Code of Virginia prevail. Va.Code 34–4 provides for the exemption of wages under garnishment along with other enumerated exemptions. Va.Code § 34–5, however, designates kinds of debts which cannot be exempted under § 34–4. Among these categories is a debt for rent. Plaintiff is therefore not entitled to exempt the subject wages.

*In re Barnes*, 29 B.R. at 678. In *Shines* as well, the bankruptcy court allowed the creditor for rent to reach wages which were claimed as protected from garnish-

---

**3.** To extend the metaphor, critics of the scope of the Virginia homestead provisions might well argue that the wedge of Virginia cheese contains too high a ratio of holes to cheese.

**4.** As a point of comparison, the Virginia Supreme Court had held in the past that the option to waive the homestead exemption is fully a concomitant part of the exemption itself, as it then existed. *Homeowners' Loan Corp. v. Reese,* 170 Va. 275, 279, 196 S.E. 625, 626 (1938). A district court in the Eastern District of Virginia has more recently found that Virginia's waiver option does not offend public policy. "Virginia has spoken on the issue and established that the

right to waive the homestead is not unconstitutional or against public policy." *Barbarossa v. Beneficial Finance Corp.,* 438 F.Supp. 840, 842 (E.D.Va.1977). The homestead waiver provision is simply another example of how a limitation, modification or "hole" in the exemption is seen to be a part of the exemptive structure itself. The Fourth Circuit has even more recently held such waivers to be enforceable although, in that case, the court allowed the debtor to invoke the lien avoidance mechanism of § 522. *Dominion Bank of Cumberlands v. Nuckolls,* 780 F.2d 408, 411 (4th Cir.1985).

ment under the homestead exemption. In so doing, that court noted that Va.Code § 34–5 seemingly moves landlords and certain other classes of creditors to "the front of the line" in order to satisfy their claims against debtors. *In re Shines*, 39 B.R. at 881, 882. The exceptions to the Virginia homestead exemption do indeed have the effect of giving landlords and certain other selected creditors a higher status and advantages over other classes of creditors. This scheme runs counter to several goals underlying the creation of the federal Bankruptcy Code and raises several unsettling policy questions.

D. *The Policy Implications of the Opt Out Scheme in Virginia's homestead Exemptions*

A number of courts and a wide-ranging group of commentators have noted that there are serious policy questions which are brought to the fore by the national patchwork of state exemption structures resulting from the opt out provisions of 11 U.S.C. § 522(b). As the court in *Shines* has noted, the exceptions to the Virginia homestead exemption bring into sharp focus the kinds of problems and "the unexpected ramifications of Congress permitting the states to 'opt out' of the federal exemption scheme." *In re Shines*, 39 B.R. at 881. At a general level, the creation of the opt out alternative has led to a lack of uniformity and consistency among the co-existing state exemption structures. *Dominion Bank of Cumberlands v. Nuckolls*, 780 F.2d 408, 414 (4th Cir.1985) (Hoffman, J., concurring specially) (referring to § 522 as "an odd creation" and concluding that "if law making is like sausage making, § 522(b) is a rare piece of sausage.").[5] The opt out provision of the Bankruptcy Reform Act of 1978 has also been criticized because it is allegedly cumbersome, because it "compels federal judges to decide obscure issues of state

law," and because "incorporating the state law into the federal code creates the potential for conflict between the two systems." Ulrich, 8 G.M.U.L.Rev. at 3.

Perhaps the most telling criticism of the ramifications, intentional or unintentional, of the opt out provision is that it imperils the fundamental goals of the Bankruptcy Code and the ideals which allegedly inspired that Code. An oft repeated bit of legal piety is that the goals of bankruptcy policy are protecting the creditors and providing the debtor a chance at a fresh start. As a commentator has noted, it is frequently the case that those goals are realized only from a systemic perspective and not in each individual instance or, perhaps, even necessarily in a majority of instances. Hallinan, *The "Fresh Start" Policy in Consumer Bankruptcy: An Historical Inventory and an Interpretative Theory*, 21 U.Rich.L.Rev. 49, 50 (1986).

There are two ways in which the Virginia Household exemption, understood as encompassing its exceptions as well, threatens to imperil ideals of the bankruptcy code. One goal of the bankruptcy code is to produce an equality among creditors, to have the levelling effect of placing them on relatively equal footing. As noted in *Shines*, "Under the old Bankruptcy Act a creditor for rent did indeed receive a priority position, in distribution of estate assets, however, that priority has been eliminated by the Bankruptcy Reform Act." *In re Shines*, 39 B.R. at 881. That court also goes on to conclude that

All of this demonstrates that the Bankruptcy Code specifically intended to eliminate state-created priorities especially those provided for landlords. Therefore, what Va.Code 34–5(5) does is to give the creditor in this instance a priority or preference from almost any other creditor.... In doing so, the Virginia statute disrupts the federal distribution scheme

---

5. Despite the admitted patchwork which has devolved from the opt out provision, § 522 has withstood a challenge that alleged a lack of uniformity rising to the level of a constitutional violation. *Sullivan v. West*, 680 F.2d 1131, 1133–34 (7th Cir.1982); *cert. denied* 459 U.S. 992, 103 S.Ct. 349, 74 L.Ed.2d 388 (1982). Several bankruptcy courts have opined that a state exemption scheme could be constitutionally infirm if it were to thwart substantially the federal policy goals. *In re Parrish*, 19 B.R. 331, 335 (Bankr.D.Colo.1982); *In re Vasko*, 6 B.R. 317, 322 (Bankr.N.D.Ohio 1980).

and its underlying goal for equality among classes of creditors.

*Id.* at 882. The Virginia Code at this point seems to run counter to the spirit of the Bankruptcy Code and limits, if it does not imperil, one of its goals. The court in *Shines* nonetheless held that those provisions of the Virginia Code mandated that a creditor for rent could reach property which was claimed under the Homestead exemption. *Id.* That court found, as does this court, that while there is an appreciable measure of dissonance between one of the quickening ideals of the bankruptcy code and the scope and limitations of the Virginia homestead exemption (with its exceptions), the Commonwealth of Virginia was exercising a permissible option in deciding to opt out of the federal structure of exemptions and in creating the limited and exception-riddled homestead exemption found in §§ 34-4 and 34-5 of the Virginia Code.

These portions of the Virginia Code also trim or pare back another historic goal of the bankruptcy code. Perhaps the most frequently invoked legal piety in regard to bankruptcy law is that the bankruptcy code is meant to provide the debtor with a fresh start.

> This purpose of the Act has been again and again emphasized by the courts as being of public as well as private interest, in that it gives the honest but unfortunate debtor who surrenders for distribution the property which he owns at the time of bankruptcy, a new opportunity in life and a clear field for future effort unhampered by the pressure and discouragement of pre-existing debt.

*Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). The prominence of the ideal of "the fresh start" as a central article of faith in bankruptcy dogma is reflected in recent cases as well. *See e.g., Cheeseman,* 656 F.2d at 63-64. It may be legitimate to worry, as some commentators have done, whether

the broad range of exceptions allowed to the Virginia homestead exemption tends to undercut the opportunities which many debtors in Virginia would have to gain a fresh start. Comment, *In re Cheeseman: A Judicial Revision of Virginia's Homestead Exemption Laws,* 16 U.Rich.L.Rev. 391, 403-04 (1982). It may even be fair to conclude, as did the court in *Shines,* that Va.Code § 34-5 "disrupts the second major goal of the Bankruptcy Reform Act of 1978, which is to provide a debtor with a fresh start after bankruptcy, by permitting this creditor to collect a dischargeable debt out of otherwise exempt property." *In re Shines,* 39 B.R. at 882.[6]

Does this case present an instance where one could justify a jurisprudence of paternalism, and generously interpret the scope and inviolability of the Virginia homestead exemption, leaving to one side the exception provision? It is true, as one court has noted, citing venerable Virginia Supreme Court precedents, that

> The homestead exemption laws must be liberally construed in favor of the householder. *Wilkinson v. Merrill,* 87 Va. 513, 12 S.E. 1015 (1891). It is a shield to protect the helpless and unfortunate debtor from the importunate and incompassionate creditor. *Linkenhoker v. Detrick,* 81 Va. 44 (1885).

*Epperley v. Woodyard,* 4 B.R. at 127. While it is legitimate to construe exemption provisions liberally and broadly in favor of the debtor, they cannot be construed so broadly as, in effect, to create provisions more robust or more potent than those which the legislature intended. As the Fourth Circuit concluded,

> Long standing Virginia precedent establishes that exemption statutes are to be construed liberally. However, '[t]he liberal construction required to be given to our constitutional and statutory provisions does not authorize the court to reduce or enlarge the exemption, or to

---

6. It may also be true the patchwork and cumbersome nature of § 522 also imperils the "fresh start" goal, for the defects of the opt out scheme may lead to increased litigation and "[l]itigation expenses are not calculated to encourage the

debtor's fresh start." Ulrich, *How Bankruptcy Exemptions Work: Virginia as an Illustration of why the "Opt Out" Clause Was a Bad Idea,* 8 G.M.U.L.Rev. 1, 3 (1985).

read into the exemption laws an exception not found there.'

*Tignor v. Parkinson,* 729 F.2d 977, 981 (4th Cir.1984) (quoting *Goldburg Co. v. Salyer,* 188 Va. 573, 582, 50 S.E.2d 272, 277 (1948), (other citations omitted).

In order to assure that debtors have the degree of protection and the accessibility to a fresh start which is arguably braced by the spirit of the Bankruptcy Code, one might feel drawn to follow the decision of the bankruptcy court below in this matter. However, while it is established that a court is free to construe liberally exemption provisions, this court is constrained by its understanding of its proper role to refrain from extending the reach and grasp of the Virginia homestead exemption when the only warrant for that extension would be the relatively abstract and sometimes inchoate policy ideals of the Bankruptcy Code.[7]

The dissonance between the detailed provisions of the Virginia homestead exemption with its exceptions and the aspirations and policy goals of the Bankruptcy Code highlight the difficulty of this decision. In adjudicating this matter, this court will either tend to curb the aspirations underlying the federal bankruptcy code or otherwise will frustrate the clear intent of the Virginia legislature. While the specific results of this choice may be regrettable in the circumstances of this case, this court's understanding of the law leaves it no course but to find that the Virginia homestead exemption implicitly includes the exceptions found in Va.Code § 34–5 as part and parcel of any exemption which debtors would claim.

The result, in this case may seem harsh and, indeed, is quite unfortunate for the appellees. The difficulties presented to these appellees and to other debtors who will succeed to their position are created in large part by what Judge Hoffman has so persuasively described as a "poorly crafted legislative scheme." *Dominion Bank,* 780 F.2d at 414–17. (Hoffman, J., concurring specially). Perhaps it could be argued, as some commentators have done, that both Congress and the Virginia legislature can —and should—take appropriate action to resolve the problem presented here. Ulrich, 8 G.M.U.L.Rev. at 7–18; Note, 21 W.M. & Mary L.Rev. at 871; Comment, 16 U.Rich.L.Rev. at 403. Nonetheless, neither legislative body has, to this point, chosen to do so and this court must adjudicate within the context of the various statutory provisions discussed *supra.*

**E.   *Conclusion***

For the reasons stated above, this court reverses the judgment of the bankruptcy court and finds that the appellees may not avoid the judicial lien imposed upon their property to satisfy a judgment for rent.

An appropriate Order shall this day issue.

---

7.  The Fourth Circuit has been criticized for being too activist when it read Virginia's homestead exemption as allowing each spouse in a household to claim the exemption. *Granger v. Watson,* 754 F.2d 1490, 1492 (9th Cir.1985) ("Yet *Cheeseman* treats the opt-out provision as an insignificant alteration of the House's exemption provisions.") (criticizing *Cheeseman v.* *Nachman,* 656 F.2d 60 (4th Cir.1981)). In dicta, the court in *Cheeseman* has been characterized as "[m]odifying state law to fit its [the court's] perceived goals of' the bankruptcy laws...." *Dominion Bank of Cumberlands,* 780 F.2d 408, 415 (4th Cir.1985) (Hoffman, J., concurring specially).