**In re Sandra Joyce SCOTT, Debtor.**

**Bankruptcy No. 95–13797–AM.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Aug. 26, 1996.

Caroline E. Costle, Rosenthal, Rich, Grimaldi & Guggenheim, Alexandria, Virginia, for creditor Sheila Harmon.

Robert L. Tomlinson, II, Arlington, Virginia, for debtor Sandra Scott.

Robert O. Tyler, Trustee, Tyler, Bartl, Burke & Albert, P.C., Alexandria, Virginia.

## MEMORANDUM OPINION

STEPHEN S. MITCHELL, Bankruptcy Judge.

This matter is before the court on an objection filed by Sheila Harmon, the debtor's largest unsecured creditor, to the debtor's claim of exemptions. A number of issues are raised with respect to specific items that the debtor has claimed as exempt. In addition, the creditor asserts that—because her claim against the debtor is based on a nondischargeable "intentional tort"—*none* of the debtor's property is exempt with respect to that claim. A trial of the objection was held on April 17, 1996, in conjunction with the separate complaints filed by the same creditor objecting to the debtor's discharge and seeking a determination of nondischargeability.

*Facts*

The objecting creditor, Sheila Harmon, hired the debtor to care for her elderly mother, who requires around-the-clock nursing care. A full exposition of the facts giving rise to Mrs. Harmon's claim against the debtor is set forth in the court's separate memorandum opinion determining that the debtor's obligation to repay a portion of the money Mrs. Harmon advanced to her was nondischargeable under § 523(a)(6), Bankruptcy Code. *Harmon v. Scott (In re Scott)*, Adv.Pro. No. 95–1497 (Bankr.E.D.Va., June 24, 1996). For the purposes of this opinion, it is sufficient to note that after Mrs. Harmon paid the debtor $28,000—representing six months wages in advance—the debtor quit approximately six weeks later, ignored Mrs. Harmon's demand for the return of the unearned portion of the wages, and proceeded to spend what remained of the funds (approximately $12,735). Mrs. Harmon brought an action against the debtor in state court seeking compensatory and punitive damages on a number of theories. On August 29,

1995, the day prior to the scheduled trial, the debtor filed a voluntary chapter 7 petition in this court. Mrs. Harmon filed a timely non-dischargeability complaint, and this court entered judgment in favor of Mrs. Harmon against the debtor in the amount of $12,735.00 on a theory of conversion and determined that such judgment was nondischargeable under § 523(a)(6), Bankruptcy Code, as a willful and malicious injury to property.

The debtor filed timely schedules claiming certain property as exempt. After the meeting of creditors, as well as a separate examination under Fed.R.Bankr.P. 2004 conducted by Mrs. Harmon, amended schedules were filed on October 20, 1995. On her amended schedule C, the debtor claimed as exempt a 1995 Hyundai automobile valued at $11,000 (but subject to a purchase money security interest in the amount of $11,985), wearing apparel in the amount of $500, various items of furniture and household goods in the aggregate amount of $5,400, jewelry (including a wedding and engagement ring) in the amount of $400, and a $300 savings account. Mrs. Harmon filed a timely objection on November 3, 1995, disputing the debtor's right to any of the claimed exemptions.

*Conclusions of Law and Discussion*

This court has jurisdiction of this controversy under 28 U.S.C. §§ 1334 and 157(a) and the general order of reference entered by the United States District Court for the Eastern District of Virginia on August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B). Since Mrs. Harmon's objection challenges both specific items claimed as well as the debtor's right to claim any exemptions at all against a claim for an intentional tort, the court will first examine the specific objections and will then address the general objection.

I.

Under § 541, Bankruptcy Code, the filing of a bankruptcy petition creates an "estate" composed of all legal and equitable interests of the debtor in property. Under § 522(b), Bankruptcy Code, however, an individual debtor may "exempt from property of the estate" either the property specified in § 522(d), Bankruptcy Code ("the Federal exemptions"), or, alternatively, the exemptions allowable under state law and general (non-bankruptcy) Federal law. A state, however, may by statute "opt out" of allowing its residents to take advantage of the Federal exemptions. § 522(b)(1), Bankruptcy Code. Virginia has done precisely that. Va.Code Ann. § 34–3.1. Accordingly, residents of Virginia filing bankruptcy petitions may claim only those exemptions allowable under state law and general Federal law. *In re Smith*, 45 B.R. 100 (Bankr.E.D.Va.1984).

The state law exemptions available to Virginia residents are primarily set forth in Title 34, Va.Code Ann. The most important of these are the "homestead" exemption in Va.Code Ann. § 34–4 and the "poor debtor's" exemption in Va.Code Ann. § 34–26. Under the homestead exemption, a "householder"—defined as any resident of Virginia—may hold up to $5,000 of real or personal property "exempt from creditor process arising out of a debt" by filing for record an instrument known as a homestead deed in the Circuit Court of the city or county where the real property is located and, if personal property is claimed, where the debtor resides. Va. Code Ann. §§ 34–4, 34–6, 34–13, and 34–14. An additional $500 exemption is allowed for each dependent supported by the householder. Va.Code Ann. § 34–4. A disabled veteran is entitled to a further $2,000 exemption. Va.Code Ann. § 34–4.1. Under the poor debtor's exemption, a householder may hold "exempt from creditor process" certain listed assets and categories of assets, some with dollar limits, some without.

A. *The 1995 Hyundai automobile.*

■ The debtor purchased a 1995 Hyundai automobile for $15,400 on April 26, 1995, approximately two days after she received the $28,000 advance from Mrs. Harmon. She paid $4,000 down and signed a retail installment contract agreeing to pay the balance in 60 monthly payments of $419.92. The amount due on the contract at the time the debtor filed her chapter 7 petition was $11,985.00, and the value of the car was

approximately $11,000.[1] Mrs. Harmon—who as the objecting party bears the burden of proof—does not challenge either of these figures.

The debtor's amended schedule C ("Property Claimed As Exempt"), fails to state the basis for the claimed exemption, but it seems plain that the debtor intended to claim the exemption provided in Va.Code Ann. § 34–26(8)—part of the poor debtor's exemption—which allows a householder to hold exempt from creditor process, in addition to those items properly claimed under the homestead exemption,

> (8) A motor vehicle ... owned by the householder, not to exceed $2,000 in value, except that a perfected security interest on the motor vehicle shall have priority over the claim of exemption under this subsection.

Additionally, the statute provides:

> The value of an item claimed as exempt under this section *shall be the fair market value of the item less any prior security interest.*

(emphasis added). Here, since the prior security interest exceeds the fair market value of the automobile, it necessarily follows that the value of the debtor's interest is less than $2,000, well within the amount allowed by the statute. Accordingly, the objection will be overruled to the extent that it asserts that the debtor's claim of exemption in the automobile exceeds the amount allowed by Virginia law.

### B. *The furniture and appliances.*

■ The debtor also claimed as exempt, citing her homestead exemption under Va. Code Ann. § 34–4, furniture and appliances in the aggregate amount of $5,400.[2] Although Mrs. Harmon complains that the debtor has placed incorrect values on the specific items listed, the court cannot find from the evidence that the values ascribed by the debtor to the listed items are inaccurate. Mrs. Harmon also complains that the total amount claimed exceeds the $5,000 maximum allowed. However, as noted above, a householder is allowed an additional $500 for each dependent.[3] The debtor's schedules—which are unrebutted—reflect that she has two dependents. Thus, assuming the nature of the plaintiff's claim does not preclude the debtor from claiming the homestead exemption, she would be entitled to exempt a total of $6,000. Accordingly, the $5,400 in exemptions claimed do not exceed the amount allowed by statute.

### C. *The herringbone gold necklace.*

■ The debtor also claims exempt under Va.Code Ann. § 34–26 a gold wedding ring, a gold engagement ring and a herringbone gold necklace. The debtor places an aggregate value of $400 on the three items. Aside from her general objections, Mrs. Harmon does not specifically object to the wedding and engagement rings, the exemption of which is clearly provided for under the poor debtor's exemption. Va.Code Ann. § 34–26(1a). She does, however, object that no portion of § 34–26 allows the exemption of the herringbone gold necklace. The debtor in her memorandum filed in response to the objection asserts that the necklace is a "family heirloom," the exemption of which is pro-

---

**1.** The debtor has reaffirmed her obligation to Hyundai Motor Finance Company for the amount due on the retail installment contract.

**2.** It appears that many, if not most, of the items could also have been claimed exempt under the poor debtor's exemption, which permits an exemption, not to exceed $5,000 in value, in "[a]ll household furnishings including, but not limited to, beds, dressers, floor coverings, washing machines, dryers, sewing machines, pots and pans for cooking, plates, and eating utensils." Va. Code Ann. § 34–26(4a). Since the debtor has claimed the items only under the homestead exemption, however, the court will limit its discussion to that issue.

**3.** "[U]pon a showing that a householder supports dependents, the householder shall be entitled to hold exempt from creditor process real and personal property, or either, selected by the householder ... not exceeding $500 in value for each dependent. For the purpose of this section, 'dependent' means an individual who derives support primarily form the householder and who does not have assets sufficient to support himself, but in no case shall an individual be the dependent of more than one householder." Va.Code Ann. § 34–4.

vided for in Va.Code Ann. § 34–26(2).[4] However, no evidence was offered by the debtor at the hearing with respect to the issue. Since the necklace is not described in the schedules as an heirloom, the court cannot, in the absence of testimony or other evidence establishing its status as an heirloom, find that a proper basis exists for exempting the necklace under Va.Code Ann. § 34–26. Therefore, the exemption, as claimed, will be denied.

### D. *The $300 savings account.*

■ Finally, the debtor has claimed exempt—as a "tenancy by the entireties"—her interest in a $300 savings account at First Union National Bank titled jointly in her and her husband's names. Under § 522(b)(2)(B), Bankruptcy Code, a debtor who is claiming exemptions under state law may also exempt

> any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such tenant is exempt from process under applicable nonbankruptcy law.

There can be little doubt that Mrs. Harmon's claim is only against the debtor, not her husband, and that under Virginia law real property held as tenants by the entireties is exempt from the claims of non-joint creditors. *Vasilion v. Vasilion,* 192 Va. 735, 66 S.E.2d 599 (1951). This is true not only of the property itself, but of the proceeds from the sale of the land. *Oliver v. Givens,* 204 Va. 123, 129 S.E.2d 661 (1963).

This court recently had occasion to consider whether in Virginia a tenancy by the entirety can be created in a bank account in circumstances where the funds in the account were not the proceeds from the voluntary sale of real estate held as tenants by the entirety. *In re Zella,* 196 B.R. 752 (Bankr. E.D.Va.1996). The court noted that, although there is broad language in *Oliver v. Givens* that would appear to recognize an ability under Virginia law to hold personal property as tenants by the entirety, "in every reported case in Virginia that has recognized a tenancy by the entirety in personal property, the personal property in question has been the direct proceeds of sale of, or the rents received from, tenancy by the entireties real estate." 196 B.R. at 757. Accordingly, and taking into account the cautious language of the Supreme Court of Virginia in its most recent opinion on the subject,[5] this court in *Zella* ruled that a bank account would not be exempt under § 522(b)(2)(B), Bankruptcy Code, solely because it was held jointly by husband and wife.[6] Accordingly, the debtor's claimed exemption of the savings account as tenancy by the entireties property will be denied.

## II.

■ There remains for consideration the plaintiff's argument that, under Virginia law, the debtor is not entitled to *any* exemptions because Virginia exemptions cannot be asserted against a claim based on an "intentional tort." Va.Code Ann. § 34–1; *Commonwealth v. Haley (In re Haley),* 41 B.R. 44 (Bankr.W.D.Va.1984). Since the debtor's conduct, as previously found by the court, clearly constitutes an intentional tort, the question of whether she thereby forfeits her right to exemptions is squarely raised.

The issue arises because Va.Code Ann. § 34–1 ("Definitions") provides in pertinent part as follows:

> As used in this title, unless the context requires a different meaning:

> "Creditor process" means all methods used by creditors to collect unsecured *debts.*

> "Debt" means a legally enforceable monetary obligation or liability of any individual whether arising out of a contract or otherwise, *but not an obligation resulting from an intentional tort.*

---

**4.** "Family portraits and family heirlooms not to exceed $5,000 in value."

**5.** *Pitts v. United States,* 242 Va. 254, 262, 408 S.E.2d 901, 905 (1991).

**6.** Since this court in *Zella* concluded that the funds in the bank account were in fact the proceeds from the sale of real estate held as tenants by the entirety, the court allowed the exemption on that basis.

(emphasis added). In addition, Virginia specifies certain other specific categories of debts to which exemptions do not apply. First, under Va.Code Ann. § 34–3, neither the homestead nor the poor debtor's exemption

> extend to distress for state or local tax or levies, nor to levy or distress for the purchase price of any articles claimed as exempt or any part of the price thereof nor for fines and damages or either arising from trespass by animals ... as to such animal so trespassing.

Second, under Va.Code Ann. § 34–5, no exemptions created under the Code of Virginia may be claimed against the following debts:

> 1. For the purchase price of any property or any part thereof.... [or]
>
> 2. For spousal or child support obligations.

Since the homestead exemption statute specifically refers to "creditor process *arising out of a debt*" (emphasis added), it seems clear that under state law a Virginia debtor could not prevent a creditor holding a judgment based on an intentional tort from reaching assets claimed exempt on a homestead deed. *See, In re Haley, supra.*[7] The result under the poor debtor's exemption in Va.Code Ann. § 34–26 is somewhat less clear, since the text of the statute refers only to "creditor process" and makes no direct reference, as does the homestead exemption statute, to "arising from a debt." On the other hand, since the definition of "creditor process" itself refers to "debts," it is at least arguable that the property otherwise protected by the poor debtor's exemption is reachable by a judgment creditor holding a claim grounded in an intentional tort. This argument is substantially undercut, however, by other language in Va.Code Ann. § 34–26 that

appears to flatly prohibit any form of execution on the items listed:

> No officer or other person shall levy or distrain upon, or attach such articles, or otherwise seek to subject such articles to *any* lien or process.

(emphasis added). Notwithstanding the ambiguity in the statute, the court assumes, for the purposes of the present opinion, that under Virginia law a judgment debtor would be unable to claim either a homestead exemption or the poor debtor's exemption against a judgment for damages arising from an intentional tort.

■ Regardless of the result under state law, however, the court must determine whether the "intentional tort" exclusion in Va.Code Ann. § 34–1 conflicts with the Bankruptcy Code. For while it is clear that Congress in § 522(b)(1) intended to defer to the states in determining *what* property could be claimed exempt, Congress did not thereby permit the states to "opt out" of other exemption-related provisions of the Bankruptcy Code.[8] *Beneficial Finance Co. v. Rodgers,* 5 B.R. 761 (Bankr.W.D.Va.1980) (debtor's right under § 522(f) to avoid liens impairing exemptions not affected by "opt out"); *Dominion Bank of Cumberlands, N.A. v. Nuckolls,* 780 F.2d 408 (4th Cir.1985) (§ 522(f) permits debtor to avoid lien against homestead property even though the underlying obligation includes a homestead exemption waiver that is valid under Virginia law); *Owen v. Owen,* 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991) (debtor could avoid judgment lien under § 522(f) even though Florida, which had opted out of Federal bankruptcy exemptions, had defined exempt property to exclude property encumbered by judicial liens). For example, Va.Code Ann. § 34–26(7), which allows a debtor to exempt tools of the trade, subordinates such exemption to "a perfected

---

**7.** In *Haley,* the court held that a debtor who had been convicted of embezzling state funds could not rely on her homestead exemption to prevent the state from setting off the embezzlement claim against her claim for refund of contributions to the state retirement system. The homestead exemption statute read somewhat differently then than it now does, however, and the court also placed significant weight on the fact that the state's claim was "akin to a fine or penalty im-

posed for the violation of the criminal law against embezzlement." 41 B.R. at 46.

**8.** Indeed, Virginia does not purport to have opted out of any portion of § 522 other than § 522(d). The language of Va.Code Ann. § 34–3.1 is simply, "No individual may exempt from property of the estate in any bankruptcy proceeding the property specified in subsection (d) of § 522 of the Bankruptcy Reform Act ..."

security interest" in the article claimed exempt. Notwithstanding the explicit language in the Virginia statute, equally explicit language in the Bankruptcy Code allows the debtor to avoid a non-purchase money security interest in a tool of the trade notwithstanding Virginia's restriction to the contrary. *In re Weinstein,* 192 B.R. 133 (Bankr. E.D.Va.1995) (dicta).

In the Bankruptcy Code, Congress has expressly addressed the kind of debts with respect to which allowed exemptions do not apply. § 522(c), Bankruptcy Code.[9] The statutory language could hardly be more clear. Unless a debtor's case is *dismissed,* property that the debtor exempts under § 522, Bankruptcy Code "is not liable during or after the case for *any debt* of the debtor that arose ... before the commencement of the case" (emphasis added). There are only four exceptions: (1) nondischargeable taxes; (2) nondischargeable alimony or child support; (3) debts secured by a lien that is not avoided in the course of the bankruptcy; and (4) embezzlement, theft, fiduciary defalcation, and conversion claims, but only where held by a Federal bank or thrift regulatory agencies against an "institution affiliated party." *Ewiak v. Ebner,* 75 B.R. 211 (Bankr.W.D.Pa. 1987) (debtor could avoid judicial lien on exempt property even though underlying debt secured by the lien was nondischargeable on account of the debtor's fraud). Where Congress—acting in an area where it

has paramount jurisdiction—has spoken clearly and without qualification as to the type of debts that can be enforced "during or after" bankruptcy against exempt property, a compelling argument can be made that it has preempted the field. *See, Taylor v. Freeland & Kronz,* 938 F.2d 420 (3d Cir.1991), *aff'd* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992) (since § 522 is deemed "clear and unambiguous," it must be interpreted literally); 3 COLLIER ON BANKRUPTCY ¶ 522.02, at 522–14 n. 8 (1996) ("[t]he better view is that the Code's subsections should be paramount" over state law). As the Fourth Circuit observed in *Cheeseman v. Nachman (In re Cheeseman),*[10] 656 F.2d 60, 63 (4th Cir.1981),

> Because Congress has the power under the Constitution to establish uniform bankruptcy laws, U.S. Const. Art. 1, § 8, and has enacted a specific provision for exemptions, 11 U.S.C. § 522, *we must adopt an interpretation of Virginia's law that does not conflict with the Act's exemption provision.*

(emphasis added).

Nor does limiting the scope of Virginia's "opt out" simply to the kind and amount of property that may be exempted conflict with the policy behind the "opt out" provision. As explained by the Fourth Circuit, state exemptions were retained when the Bankruptcy Code was enacted "so that *exemption*

---

9. Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case, except—

(1) a debt of a kind specified in section 523(a)(1) or 523(a)(5) of this title;

(2) a debt secured by a lien that is—

(A)(i) not avoided under subsection (f) or (g) of this section or under section 544, 545, 547, 548, 549, or 724(a) of this title; and

(ii) not void under section 506(d) of this title; or

(B) a tax lien, notice of which is properly filed; or

(3) a debt of a kind specified in section 523(a)(4) or 523(a)(6) of this title owed by an institution-affiliated party of an insured depository institution to a Federal depository institutions regulatory agency acting in its capacity as conservator, receiver, or liquidating agent for such institution.

10. The issue in *Cheeseman* was whether, in a joint case, a husband and wife living together could each claim the homestead exemption allowed to a "householder or head of a family." At that time, the statutory definition of "householder" was "any person, married or unmarried, who maintains a separate residence or living quarters, whether or not others are living with him." No Virginia case had ever held that husband and wife living together could both claim a homestead exemption. Nevertheless, the Fourth Circuit, noting that the Bankruptcy Code expressly provides that in a joint case each spouse is entitled to exemptions, reasoned that the states are not "free to classify which debtors should be entitled to exemptions when the classification conflicts with Federal law." 656 F.2d at 64. Accordingly, the Court held that husband and wife were each entitled to claim a $5,000 homestead exemption.

*levels* could be set at a level commensurate with the standard of living in various parts of the country." *Id.* at 64 (emphasis added). Therefore, while courts have reached differing conclusions as to the effect of a state's opting out of the Federal exemptions, the better view appears to be that a state may define only the nature and amount of the property that may be exempted. *In re Thacker*, 5 B.R. 592, 594 (Bankr.W.D.Va. 1980) (§ 522(b)(1) opt out refers only to the federal exemptions under section 522(d), not section 522 in its entirety); *In re Cooley*, 67 B.R. 229 (Bankr.N.D.Ala.1986), *aff'd* 72 B.R. 54 (N.D.Ala.1987) (although the law of Alabama, an "opt out" state, did not permit exemptions to be claimed against debts grounded in tort, bankruptcy exemptions under § 522(b) "are exemptions of the debtor from property of the estate, as distinguished from exemptions from seizure under state law"; hence, debtor entitled to exemption despite objection of creditor having personal injury judgment against debtor); *McGreevy v. ITT Financial Svcs.*, 130 B.R. 200 (D.Md. 1991), *aff'd In re McGreevy*, 955 F.2d 957 (4th Cir.1992) (although state law determines what property is exempt for debtors in "opt out" states, federal law determines what liens may be avoided). Additionally, to the extent not inconsistent with the Bankruptcy Code, the state may specify the procedure for claiming such exemptions. *Zimmerman v. Morgan (In re Morgan)*, 689 F.2d 471 (4th Cir.1982) (failure to file homestead deed in proper jurisdiction as required by Virginia law precludes claiming homestead exemption for bankruptcy purposes). This allows the states to opt out of section 522(d), as the Code expressly permits, while giving full effect to the remaining provisions of section 522 and deferring to Congress' enactments. Such a reading of the statute furthers the overall policy goals of the bankruptcy process such as ensuring uniformity under a federal distribution scheme, providing a debtor with a fresh start, and treating classes of creditors equally.

In reaching this conclusion, I am aware of and have carefully considered two reported opinions within this District that have reached a contrary result and have held, in effect, that a state opting out of the Federal exemption scheme may define not only what property is exempt, but also the types of debts with respect to which the state exemptions apply. *In re Godfrey*, 93 B.R. 451 (Bankr.E.D.Va.1988) (Bostetter, C.J.); *In re Shines*, 39 B.R. 879 (Bankr.E.D.Va.1984) (Shelley, J.).

Both *Godfrey* and *Shines* involved Va.Code Ann. § 34–5, which, prior to its amendment in 1990, provided that a homestead exemption could not be claimed against a debt for, among other things, rent. In *Godfrey*, two creditors who had obtained a judgment against the debtor for unpaid rent objected to the debtor's exemption of his automobile.[11] Against a specific argument that the exception for rent in Va.Code Ann. § 34–5(5) was in direct conflict with § 522(c), Bankruptcy Code, the court adopted the holding and language of *In re Snow*, 92 B.R. 154 (W.D.Va.1988), in which the District Court, while acknowledging that giving effect to the exceptions "threatened to imperil ideals of the Bankruptcy Code," reluctantly concluded that the "Virginia homestead exemption, taken as a whole, includes both the universe of what a debtor can claim as an exemption and the exceptions to what can be claimed under that exemption." 92 B.R. at 158–59.

*Snow*, however, was subsequently reversed by the Fourth Circuit. *Snow v. Green (In re Snow)*, 899 F.2d 337 (4th Cir.1990). The specific issue in *Snow* was whether the debtors, proceeding under § 522(f), Bankruptcy Code, could avoid a judgment lien on personal property. The property had been levied on by a creditor who held a judgment for unpaid rent, and the debtors had claimed the property as exempt on their homestead deed. Section 522(f) permits a debtor to avoid a judgment lien in any property that the debtor could have exempted but for the lien. Since the District Court had determined that the property could not be claimed exempt

---

11. At that time, the poor debtor's exemption in Virginia did not include an automobile, and, hence, the only way the debtor's interest in an automobile could be exempted was under the homestead exemption. The creditors in *Godfrey* did not object to the exemption of the debtor's household furnishings and wearing apparel.

against a debt for rent, it had held that the resulting judgment lien could not be avoided under § 522(f). On appeal, however, the Fourth Circuit, reviewing the legislative history, held that the debtors could avoid the lien notwithstanding the rent exception to the Virginia homestead exemption.[12] Accordingly, the Fourth Circuit reversed the District Court, in effect reinstating the ruling of the bankruptcy court, which had held that the debtor could avoid the judgment lien as impairing his homestead exemption. *In re Snow,* 71 B.R. 186 (Bankr.W.D.Va.1987).

In *Shines,* which was decided several years prior to both *Godfrey* and *Snow,* a creditor had obtained a judgment against the debtors for unpaid rent and had garnished their wages. Shortly afterward, the debtors recorded a homestead deed claiming the garnished wages as exempt and filed a chapter 7 bankruptcy petition. The court, although finding the rent exception in then-Va.Code Ann. § 34–5 "very troubling," 39 B.R. at 881, nevertheless concluded that the law was "clear" that bankruptcy debtors in Virginia were limited to the exemptions created by Virginia law and Federal exemptions other than those in § 522(d); that Virginia law created the $5,000.00 homestead exemption; and that Virginia law specified "certain debts against which the homestead exemption may not be claimed."[13] *Id.* at 882. The court then noted that the creditor, by virtue of his garnishment, had obtained a lien against the

garnished wages that would ordinarily survive bankruptcy and could be enforced after the debtors received their discharge. Thus, the court concluded, "the more narrow issue presented by the creditor's objection is *whether the debtor may avoid the lien on the wages pursuant to § 522(f)." Id.* (emphasis added). Since, under the court's analysis, the homestead exemption could not be claimed against a debt for rent, the garnishment lien could not be avoided, since there was no permissible exemption the lien would impair. This, of course, is essentially the same holding as that reversed by the Fourth Circuit in *Snow.*

As a result of the Fourth Circuit's holding in *Snow* and the Supreme Court's opinion in *Owen v. Owen, supra,* the authority of both *Shines* and *Godfrey* is greatly undermined, if not entirely vitiated.[14] For that reason, I do not consider either *Shines* or *Godfrey* controlling on the issue presently before the court and believe that the better position is to give effect to the unambiguous language of § 522(c), Bankruptcy Code.

Accordingly, because Congress, acting in an area where it has paramount jurisdiction, has specifically legislated as to the type of claims that can be enforced against exempt property, and since the plaintiff's claim does not fall within any of the enumerated exceptions, the court concludes that the debtor is

---

**12.** Although the opinion is not as clear as it could be, the Fourth Circuit appeared to assume that the exemption issue would not arise in the absence of a judgment lien: "It is beyond argument that the items [claimed on the debtors' homestead deed] were subject to homestead exemption under § 34–4 of the Virginia Code *had they not been subject to the lien of Green's judgment for rent."* 899 F.2d at 340 (emphasis added).

**13.** This argument—that a state which has opted out of the Federal bankruptcy exemptions may define not only the exemptions but any limitations on those exemptions—was addressed, albeit in the context of § 522(f) rather than § 522(c), by the Supreme Court in *Owen v. Owen, supra:*

Respondent asserts that it is inconsistent with the Bankruptcy Code's "opt out" policy, whereby the States may define their own exemptions, to refuse to take those exemptions with all their built-in limitations. That is plainly not true, however[.] ... We have no

basis for pronouncing the opt-out policy absolute, but must apply it along with whatever other competing or limiting policies the statute [§ 522] contains.

500 U.S. at 313, 111 S.Ct. at 1838.

**14.** Although, as noted above, both *Snow* and *Owen v. Owen* were specifically concerned with avoidance of liens impairing exemptions under § 522(f), Bankruptcy Code, Justice Scalia's approach in *Owen* is instructive. As he notes,

Nothing in the text of § 522(f) remotely justifies treating the two categories of exemptions [state or Federal] differently.... Nor is there any overwhelmingly clear policy impelling us, if we possessed the power, to create a distinction that the words of the statute do not contain.

500 U.S. at 313, 111 S.Ct. at 1838. Precisely the same can be said of § 522(c): nothing in its language remotely suggests that Congress intended that it would apply differently to state than to Federal exemptions.

entitled to her exemptions notwithstanding that the plaintiff holds a nondischargeable claim based on an intentional tort.

A separate order will be entered denying the debtor's claimed exemptions of the herringbone gold necklace and the $300 joint savings account but otherwise overruling the plaintiff's objections to the debtor's claim of exemptions.