COMMISSIONERS OF FORSYTH v. W. A. LASH and others.

*Witness—Section 590—Evidence—Special Verdict—Agency—
Demand—Remarks of Judge.*

1. One who is a party to a suit, though in his corporate capacity, is not competent to testify as to a transaction with a person deceased.

2. Neither the admission of incompetent nor the rejection of competent evidence not material to the issue or misleading, is assignable for error.

3. The court has the power under THE CODE, §409, to direct a special finding upon an issue in an action for an account and settlement of a trust fund, and so also, in all other cases except where the suit is for "money only" or "specific real property."

4. A demand upon an agent, whether in the presence of the principal or not, is in law a demand upon the latter; and evidence of transactions with the agent in furtherance of the objects of the trust, is admissible in an action for an account and settlement of the same.

5. Where the relation of principal and agent subsists, the demand for an account necessary to put the statute of limitation in operation, must be

such as to put an end to the agency : an application by letter, asking information of the agent concerning the trust fund, is not such demand, and the remark of the judge in this case, that the letter, upon its face, does not purport to be a demand, was no invasion of the province of the jury.

6. An agent who appoints an agent cannot escape personal liability upon the ground that he had no authority for the appointment.

(*Carrier* v. *Jones*, 68 N. C., 130 ; *Price* v. *Cox*, 83 N. C., 261 ; *Wynne* v. *Prairie*, 86 N. C., 73 ; *Rogers* v. *Moore*, *Ib.*, 85 ; *Potter* v. *Sturgis*, 1 Dev., 79 ; *Mining Co.* v. *Fox*, 4 Ired. Eq., 61 ; *Waring* v. *Richardson*, 11 Ired., 77 ; *Moore* v. *Hyman*, 12 Ired., 38 ; *Hyman* v. *Gray*, 4 Jones, 154 ; *Kivett* v. *Massey*, 63 N. C., 240 ; *Falls* v. *Torrence*, 4 Hawks, 412 ; *Edwards* v. *University*, 1 Dev. & Bat. Eq., 325 ; *Collier* v. *Poe*, 1 Dev. Eq., 55 ; *Blount* v. *Robeson*, 3 Jones' Eq., 73 ; *Davis* v. *Cotten*, 2 Jones' Eq., 430 ; *West* v. *Sloan*, 3 Jones' Eq., 102 ; *McNair* v. *Kennon*, 3 Mur., 139, cited and approved).

CIVIL ACTION commenced in Forsyth and tried at Fall Term, 1883, of DAVIE Superior Court, before *Shipp, J.*

At June term 1868 of the county court of Forsyth, the justices thereof, among whom was I. G. Lash, the intestate of the defendants, in pursuance of a popular vote of approval, directed one N. S. Cook to subscribe on behalf of the county for one thousand shares of one hundred dollars each in the capital stock of the North Western North Carolina railroad company, and at the same time elected the intestate financial agent of the county in regard to such subscription. In connection with these appointments the justices passed the following resolution :

"Whereas the county of Forsyth has made subscription to the capital stock of the North Western North Carolina railroad company of one hundred thousand dollars, and the first installment of five per cent. is now due and payable; and whereas one or more installments may be called for during the year, and the remainder in 1869 and 1870 by said company; for the purpose of meeting said installments as they may be called for, the court does hereby appoint I. G. Lash financial agent of said county, and he is hereby authorized and empowered to negotiate a temporary loan or loans in the name of the county, on such

terms as he may deem most advisable, to meet the installments as they may be called for; and said financial agent is further authorized to cause to be prepared coupon bonds of said county, with suitable devices, of such denomination as to him may appear most suitable for negotiation, bearing interest at the rate of 8 per cent. per annum, and payable at such time and place as he shall deem most advisable, and to negotiate and sell the same on the best terms he can obtain; provided, however, that not more than fifteen thousand dollars of the principal and interest on such bonds shall mature in any one year; said coupon bonds shall be authenticated by the signature of such financial agent and countersigned by the clerk of the superior court under the seal of the court; and that a tax be annually levied, collected and paid over to said agent on or before the 20th day of December of each year to meet the payment of principal and interest as the same falls due on all loans and bonds, which said agent may have negotiated for the purpose of paying the installments on said subscription."

Then, after directing the raising of the sum of five thousand dollars to meet the first installment prior to the fourth Thursday in July, the justices further ordered "that a tax be levied to meet the installment on the railroad subscription of one hundred thousand dollars on all persons and subjects of taxation now taxed by the state and county for state and county purposes, equal to the said state and county taxes combined for the present year, and that the same be collected and paid over to said agent on or before the 20th day of December, 1868, by the sheriff of Forsyth county, and that the said sheriff collect the taxes according to and upon the tax-list, as now made out by the clerk of this court for the present year."

On October 18th following, the county commissioners, who had succeeded the justices as municipal county officers, met and passed an order in these words:

"*Be it resolved,* That the financial agent is hereby instructed and duly authorized, whenever he finds himself minus of a suf-

11

ficiency of county funds under his control on the 20th day of December in each and every year, until the loan shall be paid, to meet all the maturing bonds and coupons on the succeeding 1st of January in each year, if minus on the 20th day of June preceding, to negotiate a temporary loan or loans, in the name of the county, payable at such times as he may deem most advisable, and to negotiate and sell the same on the best terms he can obtain, for any amount sufficient to supply him with ample funds to meet the bonds and coupons as they mature; all of which is adopted and passed by the unanimous action of the board, and the clerk is ordered to furnish the financial agent with a certified copy of this resolution."

The foregoing proceedings before the justices and ratification by the board of county commissioners in the exercise of public functions, are recited to show the extent and duration of the contemplated agency and the measure of confidence reposed in the agent in the discharge of its high and responsible trusts.

The intestate accepted the appointment and continued to act under it without rendering any account of the number of bonds issued or the disposition made of them, or of the funds received and disbursed up to the time of his death in April, 1878, during which time large sums derived from taxes levied and collected annually were paid over to him to meet the county liabilities.

The action was begun on the 30th day of September, after his death, against the defendants, to whom letters of administration on his estate have been issued, and its object is to have an account and settlement of the trust and the balance, if any, resulting from its execution, ascertained and declared.

Passing by the numerous complaints and answers as amended from time to time, the defendants rely upon the statute of limitations, put in operation, as they allege, by a demand for an account made upon the intestate in May, 1873, and never rendered, as a bar to an account, and this defence, presented in a series of issues, was

tried before the jury at fall term, 1883, in the superior court of Davie, to which the record had been removed. The issues, with the responses to each, were these:

1. Did the plaintiff in the month of August, 1877, or thereabout, demand an account and settlement of I. G. Lash, through the defendant Lemly, in the presence of Lash, and was said demand for account and settlement refused? Answer—There was a demand made upon I. G. Lash, through W. A. Lemly, in the First National Bank of Salem, N. C., but not in the presence of I. G. Lash, as he was sick in another room across the passage in the said bank, and the said demand was refused.

2. Was W. A. Lemly the agent of Lash and authorized by him to manage his general business? Answer—Yes.

3. Was the said Lemly authorized and empowered by the said Lash to attend to the special matter of his agency in regard to bonds for the county of Forsyth? Answer—Yes.

4. Was there a demand made for an account by plaintiffs in the year 1873, as alleged in the answer of the defendants? Answer—No.

5. Is this action barred by the statute of limitations? Answer—No.

Upon these findings it was adjudged by the court that the defendants come to an account with the plaintiffs touching the matters alleged in the pleadings, and that Kerr Craige be appointed referee to take and state an account touching the whole of the transactions of the intestate, as a financial agent for Forsyth county, and make report to the next term.

From this judgment the defendants appeal to this court, and we proceed to consider the exceptions contained in the record.

*Messrs. Watson & Glenn*, for plaintiffs.
*Messrs. D. Schenck* and *J. M. McCorkle*, for defendants.

Smith, C. J., after stating the above. Exception 1. The plaintiffs introduced as a witness before the jury A. E. Conrad,

chairman of the board of county commissioners, a plaintiff in the action, when objection was made by the defendants to his competency, for the reason that he is a party plaintiff—was such when the suit begun; and is a tax payer, owning taxable property in the county of Forsyth; and further, that he cannot testify to any transaction which took place between the intestate and himself.

The objection being overruled, in answer to the question, "With whom did you transact your business, Lemly or Lash?" the witness replied: "I did all the transactions with Lemly."

The defendants repeated their objection to the details of any transactions with Lemly or conversations between the witness and him, not in the presence of Lash, or any such with the intestate himself. The witness was, however, permitted to proceed and testify as follows:

"After the Belo suit was decided, I went to Mr. Lash's room. He was sick in bed. I asked him what amount of tax would have to be levied to meet the payments on the bonds. He replied about 66⅔ cents on $100 worth of property. I asked who owned the railroad bonds. He said, "I don't know; they were thrown out on the market." He further said if any one presented any of the bonds, he had surplus money and would pay them off."

The testimony recited as to the conversation with the intestate, we are disposed to think, comes under the inhibition of section 343 of C. C. P., as it certainly does within the mischief to be provided against. Although the witness' presence in the action is in his corporate capacity as a member of the county board, as is his signature to the prosecution bond, the purpose of the statute was to prohibit a party to the suit from giving evidence of a personal communication or transaction with a deceased person against his representatives in the action. While perhaps it should have been ruled out, it is not pertinent to any issue before the jury, and is harmless itself. It would be important in taking the account before the referee, but in no way could it have been prejudicial to the defendants upon the inquiries as to the

time when a demand was made and the statute commenced running. The matter of the conversation was entirely collateral and irrelevant, and rather favorable than otherwise to the defence set up in the answers. If it could be seen that the conversation detailed might have had an injurious influence upon the minds of the jurors, we should feel bound to set aside the verdict, but when its tendency is plainly otherwise and it becomes merely irrelevant, the verdict ought not to be disturbed.

As the rejection of evidence in itself not incompetent, but not material to the point in issue, cannot be assigned for error (*Carrier* v. *Jones*, 68 N. C., 130), so the admission of it when impertinent and plainly not misleading, cannot be.

2. The objection to the testimony of communications with Lemly about the agency is untenable, as he acted for his principal in the management of the county agency, and they were directly in furtherance of its objects.

3. The issue as to Lemly's undertaking to discharge the trusts assumed by his principal on his behalf was material, since his acts done with the intestate's assent were in legal effect the acts of the intestate. This agency gave validity to the alleged demand, as if made upon Lash himself.

4. The court was asked to charge the jury that there was no evidence to support an affirmative finding upon the first issue, as no demand was made on Lemly "*in the presence of Lash.*" The verdict is to this effect and the legal sufficiency of the finding is a matter to be decided by the court. As the jury find that Lemly was employed by Lash to attend to the special matter of the county agency, a demand on him as such was in law a demand on the latter, and as effectual in his absence as in his presence. The essential fact is the demand properly made as required by law. The absence of Lash in a sick-room near by is an immaterial incident, and does not impair the efficacy of the act.

It is further objected that the judge directed a special finding upon the issue instead of leaving it to the discretion of the jury, this being an action upon a money demand. THE CODE, §409.

COMMISSIONERS *v.* LASH.

The concluding clause of this section invests the judge with power in all cases, except when the action is for "money only" or "specific real property," to "direct the jury to find a special verdict in writing." The present action is not "for the recovery of money only," but is to close up and settle a long-continued trust, and to this end to have an account stated of the past business of the agency. That this is not an excepted action is fully settled by past adjudications. *Price v. Cox*, 83 N. C., 261; *Wynne* v. *Prairie*, 86 N. C., 73; *Rogers* v. *Moore*, *Ib.*, 85. But we are unable to feel the force of the objection to the verdict, which merely finds the facts as they are shown, and is an appropriate response to the inquiry submitted.

5. The court was asked to charge that the letter written by C. B. Watson, dated May 5th, 1873, was in law a demand for an account, and that the relations between the county authorities and their agent thereby became hostile and put the statute of limitations in operation. This the court declined to charge, remarking that there is no form necessary, and that "it does not purport to be a demand on its face, as I take it."

The letter set out as an exhibit is in this form:

WINSTON, N. C., May 5th, 1873.

HON. I. G. LASH:

*Dear Sir:*—Mr. Belo having commenced an action against the county of Forsyth upon certain bonds, purporting to have been issued by said county, I am requested by the board of commissioners, in order that they may be able to answer the complaint in the action without delay, to request you to submit to them between now and Monday, the 12th inst., a report setting forth the following particulars:

(1). The dates at which the various bonds purporting to have been issued by the county were sold, naming the number and amount of each bond;

(2). The amount realized from the sale of bonds, separately stated;

(3). Who were the purchasers of each, naming purchaser and number of bond purchased;

(4). When the several sales were made;

(5). What amount has been paid and what number of bonds paid off;

(6). What amount of money has been levied and collected;

(7). The whole amount of the alleged debt against the county, now outstanding;

(8). The present holders of the said bonds, as far as you can ascertain.

Very respectfully;

C. B. WATSON.

This is manifestly but an application for information to the only source from which it could be obtained, to be used in defending the county in an action brought by one who held such bonds. It was not a demand for an account of the transactions of the agency with a view to its termination, and the judge certainly did no wrong to the defendants in leaving the communication, with other evidence to the jury, to enable them to respond to the issue. Nor was he in any degree invading the province of the jury in disregard of the directions of the act of 1796 (CODE, §413) in making the remark that the communication does not upon its face purport to be such a demand as the defendants claimed in the proposed instruction—that is, as we understand, a peremptory demand for an account.

6. But the main and essential question, to the solution of which all the issues pointed, is as to the bar of the statute and the effect of the call contained in the Watson letter in putting it in motion.

The verdict settles the fact that there was no demand until the month of August, 1877, none being shown in the Watson letter, sufficient to set the statute in operation. It is true that an agent in possession of funds which he ought to pay over to his principal, is not in default so as to be exposed to an action, and a demand is required to afford him an opportunity to pay. We

need not go out of our own state for decisions to this effect. *Potter* v. *Sturgis*, 1 Dev., 79; *Deep River Gold Mining Co.* v. *Fox*, 4 Ired. Eq., 61; *Waring* v. *Richardson*, 11 Ired., 77; *Moore* v. *Hyman*, 12 Ired., 38; *Hyman* v. *Gray*, 4 Jones, 155; *Kivett* v. *Massey*, 63 N. C., 240.

The cases in which a demand is held to be necessary, and when made to put the statute in motion, will be found to be concluded or finished agencies, where nothing remains to be done but to account for and pay over the fund. They are inapplicable to a continuous indefinite agency, in which, from the confidence reposed in the agent, he assumes fiduciary relations towards his employer in the management of interests committed to his charge and becomes a trustee. While this *relation subsists*, though there may have been unheeded calls on him for information, by the mutual acquiescence of the parties, it cannot be hostile so as to permit the running of the statute. The demand necessary to convert the fiduciary into a hostile relation, must be one intended to put an end to the agency and withdraw the authority conferred, and then the statute begins to run, unless the parties by subsequent acts recognize the prolonged existence of the agency.

Where the agent becomes a trustee, charged with the execution of fiduciary duties, until the trust is put an end to, the statute does not begin to operate. In express trusts there is no bar until a sufficient time elapses after their close. This is decided in numerous cases. *Falls* v. *Torrence*, 4 Hawks, 412; *Edwards* v. *University*, 1 Dev. & Bat. Eq., 325. The same is the rule as to a bailee. *Collier* v. *Poe*, 1 Dev. Eq., 55.

Thus PEARSON, J., remarks: "Where a confidential relation is established between parties, either by act of law as in the case of coparceners, tenants in common, &c., or by agreement of the parties themselves as in case of a trust or *agency*, the rights incident to that relation continue until that relation is put an end to, and *the statute of limitations and lapse of time have no application*." *Blount* v. *Robeson*, 3 Jones' Eq., 73.

To the same effect, as to an unclosed trust, are *Davis* v. *Cotten*, 2 Jones Eq., 430; *West* v. *Sloan*, 3 Jones' Eq., 102.

In *McNair* v. *Kennon*, 2 Mur., 139, upon the dissolution of a copartnership, one of the members undertook to collect what debts were due it and to account for the proceeds as often as the plaintiff should require. He did accordingly exhibit a balance-sheet, the paper set up in the plea as a stated account, while the business of collection was yet in progress. Delivering the opinion, TAYLOR, C. J., remarks: "In this state of things the statute of limitations could not attach upon the demand. The statements furnished by Kennon were to show, from time to time, the progress he was making. The moneys were received by him in the character of a trustee, liable to pay what he received when his copartners should require it: and it was only when they did require it and he refused, *that the fiduciary character was put an end to.*"

In South Carolina it has been held that in the case of a general agency, where the business runs through a considerable period, the statute of limitations does not begin to run until the expiration of the agency, especially where there is a current account. *Hopkins* v. *Hopkins*, 4 Strob., 207; *Pairis* v. *Cobb*, 5 Rich., 133.

The continuance of the agency until the death of the agent is fully proved by the testimony of the defendant Lemly, who says:

"I transacted about all of his business as financial agent from his appointment to his death."

"As the coupons on these bonds fell due I cut them off and applied county funds to their payment. I received all funds paid into the bank for the purpose by county authority, placed it to the credit of I. G. Lash, as financial agent, and gave certificates of deposit. I would then draw checks, sign Lash's name to them as financial agent—sometimes signing "per Lemly," and sometimes "I. G. Lash, financial agent," as appears by the checks themselves now exhibited to me—thus check out the money and apply it to the payment of bonds and coupons. I sometimes drew orders and sent to the board of commissioners to be passed by them—my handwriting will show which ones."

The witness also testified to the illness of his intestate for two or three years preceding his death, confining him to his bed, and when no one was allowed to see him on business.

This testimony, showing an uninterrupted continuance of the financial agency during the life of the intestate and the management of its business by the witness, fully warrants the findings of the jury, and removes out of the way any defence arising out of the lapse of time.

Aside from any final demand, the death of the agent necessarily put a termination on the agency. Story on Agency, §§462, 688, 490.

The maxim expressed in the words "*delegatus non potest delegare*" is invoked for the protection of the principal against a liability sought to be imposed by the agent of an agent, to the former of whom no authority is given, and in whose discretion no confidence has been reposed; and even in such case he may perform some services for his superior, of subordinate character, which will be deemed to have been rendered by the appointed agent. But this is a rule under which, in a proper case, the principal may shield himself from responsibility. But when the principal, as in our case, recognizes the validity and sufficiency of the services rendered by the subordinate, for the appointed agent and in discharge of the trusts assumed by the latter, it does not rest with him to repudiate the acts of his employee and escape personal liability for the want of authority to employ him, not contested by the plaintiffs but acquiesced in by them.

We do not attach importance to the variations pointed out between the plaintiffs' allegations and proofs, since the former may be amended so as to conform to the latter and render them consistent. The Code of Civil Procedure is liberal in allowing this to meet the substantial ends of justice—sections 128 to 132 inclusive.

It must therefore be declared that there is no error in the record and the judgment must be affirmed. This will be certified to the court below.

No error.                                          Affirmed.