EMILY L. GOOCH v. WELDON BANK AND TRUST COMPANY, ADMR. OF J. T. GOOCH.

(Filed 16 October, 1918.)

1. **Principal and Agent—Limitation of Actions—Demand and Refusal.**

   The right of action of a principal against his general agent begins to run from his demand and refusal, or from the death of the agent.

2. **Same—Husband and Wife—Wife's Separate Property.**

   Where the husband has acted as the general agent of his wife to invest and reinvest her separate property, or moneys belonging to her separate estate, according to his own judgment, and the husband has died, and there is no evidence of a demand on her part for the property or investments so made, or his refusal thereof, the agency ceased by operation of the law, at his death, and the statute of limitation will begin to run only from that time.

3. **Same—Personalty—Jus Accresindi.**

   Where the husband, acting as the general agent of his wife, has invested her separate personalty in certain shares of stock, having had them issued

to himself and wife, the shares remain the separate property of the wife, and the question of the right of survivorship in personalty between husband and wife does not arise. This question discussed by CLARK, C. J.

HOKE and ALLEN, JJ., concur in result.

APPEAL by defendant from *Kerr, J.,* at March Term, 1918, of HALIFAX.

*F. S. Spruill, W. L. Long, and George C. Green for plaintiff.*
*Garland Midyette, C. G. Peebles, W. E. Daniel, and Murray Allen for defendant.*

CLARK, C. J. This is an action by the widow of James T. Gooch against the administrator of her deceased husband, alleging that, soon after his marriage, as general agent of his wife he took the absolute control, management, and administration of all her separate property; that he made sales of her separate real estate at frequent intervals, having the deeds properly executed by him and her, but collecting the purchase money and investing it according to his judgment; that in this manner, between 1903 and his death, in 1916, he made sale of fourteen parcels of his wife's separate real estate, in each case collecting the purchase price of same, using and investing it as her general agent; and that, in addition, he also collected a considerable sum of money that came to her as distributee of her father's estate, which he also held and administered in the same way, though of this latter fact proof could not be offered. Moreover, the plaintiff was the owner of a considerable quantity of stock in the Weldon Brick and Land Improvement Company, which her husband in the same manner from time to time transferred upon the books or delivered to the transferees without consulting or advising with his wife, some of which he sold outright for cash, which he used in like manner as the proceeds of her land, until the larger part of this stock was placed in his own name or in the joint name of himself and wife.

There was no settlement or demand for settlement. The husband died, leaving no will and no children of the marriage, and the defendant bank qualified as his administrator. The heirs at law and next of kin have been made parties defendant with the bank.

This action is to recover from the husband's estate said sums of money and the said shares of stock. The jury have found that defendant's intestate at the time of his death was indebted to the plaintiff in the items set out from 5 to 19 in the sum of $10,821.67 for the proceeds of the sale of her realty, and in the further sum of $800 for money which her husband received from the sale of certain shares of her stock in the brick company. The jury also find that she was the beneficial owner of fifteen shares of stock of the brick company which stood in

. the name of her husband and the owner of five other shares of stock of the same nature. While there are forty-four exceptions taken as to all the above, there is practically but one exception thereto, and that is the ruling of the judge that the plaintiff's claim was not barred by the statute of limitations.

In this there was no error. The statute of limitations does not run against an agent until demand and refusal. *Moore v. Hyman,* 34 N. C., 38; *Wiley v. Logan,* 95 N. C., 358; *Buchanan v. Parker,* 27 N. C., 597.

In *Patterson v. Lilly,* 90 N. C., 89, it is said: "In *Commissioners v. Lash,* 89 N. C., 159, it was held that where the relation of principal and agency subsists, the demand for an account necessary to put the statute of limitations in operation must be such as to put an end to the agency. *Nothing less than a demand and refusal,* or the coming to a final account and settlement, or the death of one of the parties, will put an end to the agency." There was no evidence here tending to show a demand and refusal or any other termination of the agency, except the death of the husband, and the court properly instructed the jury that the statute of limitations did not bar. The subject is fully discussed by *Smith, C. J.,* in *Commissioners v. Lash,* 89 N. C., 168, and by *Pearson, J.,* in *Blount v. Robeson,* 56 N. C., 102.

This affirms the recovery for $11,621.67, with interest at 6 per cent from 21 April, 1916, the date of the death of said J. T. Gooch, and the termination of his general agency for the plaintiff. The rest of the recovery was adjudging the plaintiff the owner and entitled to the sole possession and enjoyment in her own right of fifty-five shares of stock of the par value of $50 each in the Weldon Brick and Land Improvement Company. Twenty of these shares stood in the name of J. T. Gooch alone, and the jury find that they were bought with the funds of the plaintiff, and there can be no question as to them. Indeed the only exception is on the same ground of the statute of limitations. The other thirty-five shares stood on the books in the joint names of E. L. Gooch (plaintiff) and J. T. Gooch.

By the uncontradicted evidence, these shares, like the other twenty, were bought by him by using funds in his hands belonging to his wife, or rather he transferred these shares belonging to her to another party, who transferred them back to E. L. and J. T. Gooch. These shares, therefore, also remained her sole property. *Kilpatrick v. Kilpatrick,* at this term; *Speas v. Woodhouse,* 162 N. C., 68.

The judge instructed the jury to answer the issue as to the thirty-five shares "Yes," giving no reason, and wrote the answer himself. In this there was no error. The exception (33) taken assigns no ground therefor.

It is true that in the complaint it is alleged, as a matter of abundant

caution, that the plaintiff was entitled to these shares anyway by entireties, and if this were not so, that she was entitled to one-half thereof as tenant in common. The defendant also endeavored to raise the legal proposition whether there was an estate by entireties in personalty by asking the judge to charge that there was not. The court did not charge at all on the proposition, but merely directed a verdict for the plaintiff upon the evidence, according to which her ownership of these thirty-five shares had not been changed. *Kilpatrick v. Kilpatrick, supra.*

An estate by entireties is of purely judicial creation in England in the remote past, for there is no statute there or in this State recognizing it. *Gaston, J.,* 19 N. C., 537, says: "When *lands* are conveyed to husband and wife, they have not a joint estate, but they hold by entireties. Being in law but one person, they have each the whole estate as one person; and on the death of either of them, the whole estate continues in the survivor. This was settled at least as far back as the reign of Edward III, as appears from the case on the petition of John Hawkins, as the heir of John Ocle, quoted by *Lord Coke*, 1 Inst., 187a." This was quoted with approval by *Hoke, J.,* in *McKinnon v. Caulk,* 167 N. C., 412. The estate originated in feudal reasons, that when the wife died the land should go to the husband by survivorship; but there was no such reason as to the personal property of the wife, which became absolutely the property of the husband on marriage. There was no estate by entireties in personalty in England, and it has been abolished as to realty by the Married Woman's Act of 1882. *Thornley v. Thornley,* 2 Ch. Div. (1893), 229.

The estate is an exception to the general rule, that where there is a conveyance or devise to two, they should hold as tenants in common, and gave to the husband survivorship in the wife's realty, of which he had the income only and not the absolute property, as he had of her personalty.

In 1784 (chapter 204, sections 5 and 6, now Rev., 1578 and 1579) estates tail were converted into fee simples, and joint tenancies into tenancy in common. The Court, in this State, however, held that the latter did not apply to estates by the entirety, but in each case where this was held only realty was involved.

The Constitution of 1868, Art. X, sec. 6, revolutionized our policy as to the ownership of property by married women, and provided that all the property, real and personal, of a married woman, whether acquired before or after marriage, should remain her sole and separate property as fully as if she were unmarried. We have decisions since 1868 holding that this did not destroy the estate by entireties, but all these cases were as to realty.

In other States the decisions are in conflict whether the "Married Women's Property Acts" have destroyed the estate by entireties. The

courts of some States (and in England, whence we derive the doctrine) holding that they do, and others to the contrary, but even in those States, which hold that the estate by entireties was not destroyed, there are conflicting opinions whether there is any estate by entirety in personalty.

- In this State we have had no decision holding that there is an estate by entirety in personalty, and there is no reason in this case, and at this late day, to extend it to personalty, for the point does not arise on the facts in this case, and the judge below made no ruling upon it.

The objection urged to the estate by entireties is not only that it is an anomaly in our judicial system, without any statute recognizing it, and that it is contrary to our policy as to property rights of women, as stated in the Constitution, but that it abstracts the property embraced in it from liability to debt during the joint lives, and that during all this time the husband enjoys the income from the wife's half of the property, as well as from his own half.

Whatever force may be given to these objections, the matter may well be left to the lawmaking department of the government. This Court has more than once suggested the abolition of the estate by entireties to the Legislature. *Bynum v. Wicker,* 141 N. C., 96; *Finch v. Cecil,* 170 N. C., 74, 75.

No error.