In re John MASSEY, Debtor.

Bankruptcy No. 98–11027–SSM.

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Sept. 17, 1998.

Linda D. Regenhardt, The Jefferson Law Firm, McLean, VA, for the debtor.

Kurt C. Rommel, Stauffer, Mannix, Rommel, Decker & Dulany, LLC, McLean, VA, for Kirk D. Weih, Executor.

Adam C. Paul, Gold & Stanley, P.C., Alexandria, VA, for H. Jason Gold, Chapter 7 Trustee.

## MEMORANDUM OPINION

STEPHEN S. MITCHELL, Bankruptcy Judge.

This matter is before the court on an objection to the debtor's claimed exemptions filed by Kirk D. Weih, as executor of the estate of Mary L. Weih, an unsecured creditor.[1] A hearing was held on September 3, 1998, at which the court heard argument from the parties and then took the matter under advisement. The sole issue before the court is whether, under Virginia law, shares of stock and a brokerage account—neither of which constitutes proceeds of, or the rents or profits from, tenancy by the entireties real estate—can be held as tenants by the entirety and thereby claimed exempt under § 522(b)(2)(B), Bankruptcy Code. For the reasons stated, the court concludes that they can.

### Facts and Background

John Massey (the "debtor") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in this court on February

---

1. H. Jason Gold, the chapter 7 trustee, had also filed an objection, which was set for hearing at the same time as the Weih estate's objection. At the hearing, however, counsel for the trustee advised the court that his objection had been directed to the original schedule of exemptions filed in the case. The amended schedule of exemptions filed by the debtor satisfied the trustee's concerns, and counsel for the trustee withdrew his objection orally on the record.

9, 1998. On his schedules he claimed a number of assets exempt, to which both the chapter 7 trustee and the Weih estate objected. On May 8, 1998, the debtor filed an amended Schedule C ("Property Claimed Exempt") modifying and clarifying the basis of the claimed exemptions. In light of the amendment, the parties have stipulated that the only exemptions that now remain contested are (1) the debtor's claimed exemption, under the Virginia homestead exemption, of 400 shares of stock in Electronic Innovators, Inc., valued by the debtor at $40.00; (2) the claimed exemption, under § 522(b)(2)(B), Bankruptcy Code,[2] of another 1,000 shares of stock in Electronic Innovators, Inc., valued by the debtor at $100.00; and (3) the claimed exemption under § 522(b)(2)(B), Bankruptcy Code, of a Merrill Lynch brokerage account with a value of $60,512.00. With respect to the Electronic Innovators stock, the parties have agreed to reserve the question of value for further hearing. The only issue therefore to be decided at the present time is whether the 1000 shares of Electronic Innovators stock and the balance in the Merrill Lynch account are, independent of their value, exempt as tenancy by the entireties property.

The stock in Electronic Innovators is evidenced by a share certificate dated February 3, 1997, certifying that "John Massey & Kyle Massey, Tenants by the Entirety" are the registered holders of 1,000 shares of the corporation's stock. It is conceded by the debtor that the shares had previously been registered solely in the debtor's name and were simply reissued in joint names approximately 11 months after he married Kyle Massey. The account statement for the Merrill Lynch account shows the account owners as "John Massey and Kyle Massey ATBE." It is represented that the account represents the "pooling" of what had been separate brokerage accounts, approximately equal in amount, owned by Mr. and Mrs. Massey before they married. As of Decem-

ber 31, 1997, the account contained $21.01 in cash, $639.00 in a "money fund" and $43,-592.00 in "priced investments" consisting of shares of stock in nine publicly-held corporations. In the absence of evidence to the contrary, the court will assume the account holdings remained essentially the same on February 9, 1998, the date the debtor's petition was filed. No evidence was presented as to whether the shares of stock held in the account are themselves registered in the name of Mr. and Mrs. Massey or are held in street form. It is conceded that neither the Electronic Innovators stock nor the Merrill Lynch account represent rents or proceeds from tenancy by the entireties real estate.

### Conclusions of Law and Discussion

#### I.

This court has jurisdiction under 28 U.S.C. §§ 1334 and 157(a) and the general order of reference entered by the United States District Court for the Eastern District of Virginia on August 15, 1984. Under 28 U.S.C. § 157(b)(2)(B), this is a core proceeding in which final orders and judgments may be entered by a bankruptcy judge, subject to the right of appeal under 28 U.S.C. § 158.

#### II.

As a preliminary matter, it is important to emphasize that the court is *not* called upon, in the context of the present objection, to consider potential avoidance issues arising from the transfer of the debtor's separate property into a tenancy by the entireties. There is no question that a bankruptcy trustee has the power to set aside, or avoid, transfers of a debtor's separate property into a tenancy by the entireties if the transfer was done with actual intent to hinder, delay or defraud creditors or if, even in the absence of such intent, the transfer was for less than reasonably equivalent value, and the debtor was insolvent, or was rendered insolvent by the transfer. § 548(a), Bankruptcy Code; *Hyman v. Porter (In re Porter)*, 37

---

**2.** The stated basis for the exemption on the schedules was *"Bass v. Thacker*, 5 B.R. 592 (Bankr.W.D.Va.1980)." The *Bass* case did not create or define an exemption but merely clarified that the exemption recognized by § 522(b)(2)(B), Bankruptcy Code, for tenancy by the entirety property could be claimed by Virginia residents even though Virginia had "opted out" of the Federal exemptions in § 522(d). Accordingly, the court treats the citation to *Bass*, though inartful, as claiming an exemption under § 522(b)(2)(B).

B.R. 56 (Bankr.E.D.Va.1984) (prebankruptcy transfer of real estate by debtor to himself and his wife as tenants by the entirety); *Shaia v. Meyer (In re Meyer)*, 206 B.R. 410 (Bankr.E.D.Va.1997) (debtor's use of nonexempt cash bequest to pay off mortgage on property owned with nonfiling wife as tenants by the entirety).

■ Although § 548(a) applies only to transfers occurring within one year of the filing of the bankruptcy petition, the trustee may also, under § 544(b), Bankruptcy Code, avoid a transfer on any basis available to creditors under state law. Virginia law permits creditors to avoid conveyances made either with actual intent to hinder, delay, or defraud creditors or made "without consideration deemed valuable in law or which is upon consideration of marriage." Va.Code Ann. §§ 55–80 and 55–81. There is no statute of limitations on an action under Va.Code Ann. § 55–80 to avoid a transfer made with actual intent to hinder, delay, or defraud creditors, and the bringing of such action is limited only by the doctrine of laches. *Flook v. Armentrout's Adm'r*, 100 Va. 638, 42 S.E. 686 (1902) (suit brought ten years after conveyance was recorded); *Atkinson v. Solenberger*, 112 Va. 667, 72 S.E. 727 (1911) (suit instituted nine years after conveyance was recorded). The statute of limitations for an action under Va.Code Ann. § 55–81, to set aside a transfer not made for valuable consideration is five years. Va.Code Ann. § 8.01–253. In determining whether a debtor was rendered insolvent by a transfer, the value of exempt assets are excluded. *Meyer*, 206 B.R. at 417–18. Finally, a debtor is not permitted to claim an exemption in property recovered by a bankruptcy trustee under one of the trustee's avoidance powers if the debtor made the transfer voluntarily. § 522(g)(1)(A), Bankruptcy Code. However, only the bankruptcy trustee has standing to bring an action under § 548(a) or § 544(b), Bankruptcy Code. *In re Manicure*, 29 B.R. 248, 251 (Bankr.W.D.Va.1983). As noted above, the trustee has now withdrawn his original objection to the debtor's exemptions. Additionally, an action to avoid a transfer must be brought as an adversary proceeding. Fed.R.Bankr.P. 7001. Accordingly, potential avoidance issues are simply not before the court at this time, and the court expresses no view concerning them.

## III.

■ Under § 541, Bankruptcy Code, the filing of a bankruptcy petition creates an "estate" composed of all legal and equitable interests of the debtor in property, "wherever located and by whomever held." This includes a debtor's interest in property held as tenants by the entireties with a non-debtor spouse. *Greenblatt v. Ford (In re Ford)*, 638 F.2d 14 (4th Cir.1981). Nevertheless, as part of his or her "fresh start," an individual debtor may "exempt from property of the estate"—and thus hold, free from the claims of the trustee and most creditors—either the property specified in § 522(d), Bankruptcy Code ("the Federal exemptions"), or, alternatively, the exemptions allowable under state law and general (nonbankruptcy) Federal law. § 522(b), Bankruptcy Code. A state, however, may "opt out" of allowing its residents to take advantage of the Federal exemptions. § 522(b)(1), Bankruptcy Code. Virginia has done precisely that. Va.Code Ann. § 34–3.1. Residents of Virginia filing bankruptcy petitions may therefore claim only those exemptions allowable under state law and general (nonbankruptcy) Federal law. *In re Smith*, 45 B.R. 100 (Bankr. E.D.Va.1984).

■ Relevant to the present controversy, § 522(b)(2)(B), Bankruptcy Code, expressly permits a debtor who claims exemptions under state law to exempt

any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law.

Under Virginia law, property held as tenants by the entirety may be reached by joint creditors of both spouses but is not liable for the debts of either spouse alone. *Vasilion v. Vasilion*, 192 Va. 735, 740–43, 66 S.E.2d 599, 602–04 (1951). Accordingly, such property is exempt from the claims of nonjoint creditors, and may be administered by the trustee only

for the benefit of joint creditors. *Williams v. Peyton (In re Williams )*, 104 F.3d 688, 690 (4th Cir.1997); *Sumy v. Schlossberg,* 777 F.2d 921, 927–28 (4th Cir.1985).

Historically, tenancy by the entirety was a mode of holding title to lands or tenements, although it does appear that in England prior to 1776, "certain cases involving mortgages (Coppin Case, 2 P.Wms. 496, 24 Eng. Reprint 832 (1728)), bequests (Atcheson v. Atcheson, 11 Beav. 485, 50 Eng. Reprint 905), and money lent (Christ's Hospital v. Budgin, 2 Vern 683 (1712))" had recognized a tenancy by the entirety in personal property. *First Nat'l Bank of Leesburg v. Hector Supply Co.,* 254 So.2d 777, 779 (Fla.1971). This recognition appears to have occurred in those instances "where equity chose to support the wife lest she be unjustly deprived of her personal property, or in instances where profits and moneys derived from land held by the entireties was transformed into choses in action." *Id.* Consistent with the latter rationale, courts in Virginia have recognized a tenancy by the entirety in personal property consisting of the rents or sales proceeds from tenancy by the entirety real estate. *Moore v. Glotzbach,* 188 F.Supp. 267 (E.D.Va.1960) (rents); *Oliver v. Givens,* 204 Va. 123, 129 S.E.2d 661 (1963) (proceeds of sale); *Pitts v. United States,* 242 Va. 254, 408 S.E.2d 901 (1991) (promissory notes received as part of purchase price). The issue raised by the present objection is whether personal property which is *not* derived from tenancy by the entirety real estate may be held in that form of ownership and thereby protected against the claims of nonjoint creditors.

## IV.

### A.

■ This court has previously addressed the issue on two occasions. *In re Zella,* 196 B.R. 752 (Bankr.E.D.Va.1996), *aff'd* 202 B.R. 712 (E.D.Va.1996); *In re Scott,* 199 B.R. 586 (Bankr.E.D.Va.1996). In *Zella* the issue involved the proceeds of real estate that had been conveyed to a husband and wife "as joint tenants with the common law right of survivorship." This court held that the deed effectively created a tenancy by the entirety, and that, under *Oliver,* the cash proceeds of

sale held in a bank account were also owned as tenants by the entirety and were therefore exempt from the claims of the husband's creditors under § 522(b)(2)(B), Bankruptcy Code. Although ruling in the debtor's favor on the dispositive issue, the court did reject the debtor's alternative argument that, because the bank account that held the sales proceeds was *titled* as a tenants by the entirety account, the funds were independently exempt even if the real estate from which they were derived had not been held in a tenancy by the entirety. The court observed that there was broad language in *Oliver* suggesting that a tenancy by the entirety may be created in Virginia in any type of personal property. This court also noted, however, that "in every reported case in Virginia that has recognized a tenancy by the entirety in personal property, the personal property in question has been the direct proceeds of sale of, or the rents received from, tenancy by the entireties real estate." *Zella,* 196 B.R. at 752. Furthermore, the most recent decision from the Supreme Court of Virginia addressing the issue had carefully restricted its holding "to the proceeds of voluntary sales of realty owned by the entireties." *Pitts,* 242 Va. at 261, 408 S.E.2d at 905. Given that cautious language from the highest court of Virginia, this court was unwilling to conclude that a tenancy by the entirety may be created in Virginia in personal property other than the proceeds of tenancy by the entirety real estate. *Zella,* 196 B.R. at 757.

In *Scott,* the debtor had claimed exempt, as a tenancy by the entirety, a $300 savings account titled jointly with her husband. After reviewing *Zella,* the court adhered to its prior holding "that a bank account would not be exempt under § 522(b)(2)(B), Bankruptcy Code, solely because it was held jointly by husband and wife." *Scott,* 199 B.R. at 590. On that basis, the court denied the claimed exemption.

### B.

The discussions in *Zella* and *Scott* could both arguably be characterized as dicta—in *Zella* because the court found that the money in the account was in fact the proceeds of tenancy by the entirety real estate and thus

protected under *Oliver*, and in *Scott* because there was no evidence the account was actually titled as a tenancy by the entirety account, and, in fact appeared to simply be an ordinary joint account. Additionally, the debtor in the present case has cited to additional authorities not considered by this court in *Zella* and *Scott*. Accordingly, a fresh review is appropriate.

At common law, when land was conveyed to a man and a wife, "the seizen of each was an entirety or in one person because from the unity of their person by marriage they have land entirely as one person." *Vasilion*, 192 Va. at 739, 66 S.E.2d at 601. As explained by Blackstone.

> If an estate in fee be given to a man and his wife they are neither properly joint tenants nor tenants in common; for husband and wife being considered one person in law they cannot take the estate by moities, but both are seized of the entirety per tout et non per my, the consequence of which is that neither the husband nor wife can dispose of any part without the assent of the other, but the whole must remain in the survivor.

2 Blackstone, Commentaries 182, *quoted in Turlington v. Lucas*, 186 N.C. 283, 119 S.E. 366 (1923). With respect to personal property, however, the common law rule was different: "[T]he personal property of the wife became absolutely the property of the husband on marriage," *Turlington*, 186 N.C. 283, 119 S.E. 366 (quoting *Gooch v. Weldon Bank & Trust Co.*, 176 N.C. 213, 97 S.E. 53 (1918)), with the consequence that "if a chattel is given or sold to the husband and wife jointly the title passes wholly to him." *Hector Supply*, 254 So.2d at 779. Of course, the enactment in Virginia in 1877 of the Married Women's Property Act (now Va.Code Ann. § 55–35), dramatically changed the common law rule so as to permit a married woman to "acquire, hold, control and dispose of property as if she were unmarried." Although every state has now recognized the right of married women to own property free from common-law restraints, the states have split over whether the abolition of the ancient legal fiction that husband and wife are "one person in law" militated for or against ex-

tending the "anomalous" and "peculiar" doctrine of tenancy by the entireties to personal property. *Compare, e.g., Turlington*, 186 N.C. 283, 119 S.E. 366 (declining to recognize entireties estate in North Carolina in promissory notes given as purchase price of entireties real estate); *Fort Lee Savings & Loan Assn. v. Li Butti*, 55 N.J. 532, 264 A.2d 33 (1970) (declining to recognize entireties estate in New Jersey in surplus funds from a mortgage foreclosure of tenancy by the entireties real estate); *with Hector Supply*, 254 So.2d at 779 (in Florida, joint checking account of husband and wife would be owned as tenants by the entirety if that was what the depositors had intended, notwithstanding that the signature card contained no mention of a tenancy by the entireties and allowed either depositor to make withdrawals on behalf of both).

As noted above, the then-Supreme Court of Appeals of Virginia first addressed the issue of whether a tenancy by the entirety can exist in personal property in *Oliver*. The facts in that case were that Mr. and Mrs. Oliver had owned real estate as tenants by the entirety. They sold the real estate within a year prior to Mr. Oliver's filing a voluntary petition in bankruptcy, and the net cash proceeds of the sale were paid over to Mrs. Oliver. The bankruptcy trustee brought a fraudulent conveyance action against Mrs. Oliver to recover one-half of the proceeds on the basis that the sale of the property terminated the tenancy by the entirety, so that the cash proceeds were owned as tenants in common, and the receipt by Mrs. Oliver of the entire sum constituted a gift to her of her husband's one-half share. The court began its analysis by noting, "There is a conflict of authority as to whether an estate by the entirety can exist in personal property." *Oliver*, 204 Va. at 126, 129 S.E.2d at 663. The Court observed that while some courts "take the view that such an estate is peculiar to and exists only in real property," the majority view was that "there is nothing in the character of personal property which precludes ownership of it by the entirety under the modern law, since the foundation of such ownership lies in the fact that in law a husband and wife are, or may be considered to

be, one person." *Id.* (citation omitted). The Court then stated,

> While the question has not been previously presented to this court, we agree with the reasoning of the majority view and hold that in this State personal property as well as realty may be held by a husband and wife as tenants by the entirety.

*Id.* The Court went on to observe, "In those jurisdictions which recognize a tenancy by the entirety in personal property, it is almost universally held that, in the absence of an agreement or understanding to the contrary, the proceeds derived from a voluntary sale of real estate held by the entireties are likewise held by the entireties." *Id.*, at 126–27, 129 S.E.2d at 663. The Court therefore ruled that the proceeds of sale from the property owned by Mr. and Mrs. Oliver as tenants by the entireties "were likewise owned and held by them as tenants by the entireties," and were thereby immune from the claims of Mr. Oliver's creditors; and that, accordingly, a gift from Mr. Oliver to Mrs. Oliver of his interest in the sales proceeds was not in fraud of the husband's creditors, since they could not be prejudiced by a gift of property which was exempt from their claims. *Id.*, 204 Va. at 127, 129 S.E.2d at 663.

The Court was next presented with the issue in *Pitts v. United States*. In that case, Mr. and Mrs. Pitts had sold real property which they owned as tenants by the entirety with common law right of survivorship. *Pitts*, 242 Va. at 257, 408 S.E.2d at 902. As the consideration for the sale, they received two promissory notes made payable "to the order of GEORGE G. PITTS and ELLEN O. PITTS." *Id.* The Internal Revenue Service levied on the notes to satisfy a tax liability of the husband, and Mrs. Pitts brought an action in Federal court for wrongful levy. The district court held that because the notes did not state that they were owned as tenants by the entirety and did not include any words indicating survivorship, they were owned by Mr. and Mrs. Pitts as tenants in common, with the result that the Internal Revenue Service was entitled to levy on Mr. Pitts's one-half interest.

*Id.*, 242 Va. at 258, 408 S.E.2d at 903. On appeal, the Fourth Circuit certified to the Supreme Court of Virginia the question of whether the notes, received in exchange for real property held as tenants by the entireties, were also held as tenants by the entireties, even though the notes contained no language indicating a right of survivorship. *Id.*, 242 Va. at 256, 408 S.E.2d at 902.

The Virginia Supreme Court held that Va. Code Ann. §§ 55–20 and 55–21—which had the effect of abolishing tenancies by the entirety in Virginia unless "it manifestly appears from the tenor of the instrument that it was intended the part of the one dying should then belong to the others"—did not apply to the promissory notes in question, because such notes were not "instruments" and did not "create a tenancy by the entirety" but were merely "memorials of a chose in action, the corpus of such an estate, one that arose by rule of law." *Id.*, 242 Va. at 260, 408 S.E.2d at 901. The Court accordingly held that *Oliver* controlled, and that the notes were held by Mr. and Mrs. Pitts as tenants by the entirety. Having responded to the certified question, however, the Court then went on to qualify its holding:

> We are aware that, in several jurisdictions which recognize that personalty can be owned as a tenancy by the entirety, *the rule that we applied to the proceeds of voluntary sales of realty owned by the entirety* in Oliver has been extended to the proceeds of other kinds of disposal or conversion of realty.... *We confine the reach of our decision to our answer to the question as certified, based upon the facts detailed in the order of certification.*

*Id.*, 242 Va. at 262, 408 S.E.2d at 905. The court further noted the competing arguments for and against broad application of the tenancy by the entirety doctrine—on the one hand " 'public policy and social interest' in protecting 'the family unit,' " and on the other the "public policy ... that property [not] be so easily immunized from the claims of creditors"—but concluded that the choice between those policies properly lay with the General Assembly. *Id.*[3]

---

3. The debtor also cites to a published Virginia Circuit Court opinion, *Hayes v. Barker*, 18 Va.

Cir. 414 (1990), decided a year prior to *Pitts*, as supporting the argument that a tenancy by the

In this connection, the debtor points out that several Virginia statutes do seemingly address the issue of a tenancy by the entirety in personal property. First, Va.Code Ann. § 46.2–622 expressly *prohibits* the issuance of a motor vehicle title as tenants by the entirety. By negative implication, the debtor argues, the General Assembly, by prohibiting such titling only with respect to one specific type of asset, recognized that other types of personal property could validly be held by the entireties. Additionally, the language of Va.Code Ann. § 55–20, which had the effect, as the Supreme Court of Virginia explained in *Pitts*, of abolishing tenancies by the entirety in Virginia, does not distinguish between personal and real property:

> And if hereafter any estate, *real or personal*, is conveyed or devised to a husband and his wife they shall take and hold the same by moieties in like manner as if a distinct moiety had been given to each by a separate conveyance.

*(emphasis added).*[4] Finally—and probably most relevant to the present case—two statutes expressly address, and by implication arguably assume as valid, the issuance of corporate stock to a husband and wife as tenants by the entirety. The first, Va.Code Ann. § 13–435, provides as follows:

> Whenever a security issued by a corporation organized under the laws of this Commonwealth shall be registered ... *in the names of a man and a woman as tenants by the entireties with right of survivorship* and one of such persons dies, such corporation and any transfer agent of such corporation shall, upon receipt of evidence of death, be entitled to treat the survivor ... as the owner ... of such security for all purposes and to cause such security to be registered in the name of such survivor[.]

(emphasis added). The second, Va.Code Ann. § 13.1–662(H), provides as follows:

> Shares held by two or more persons as joint tenants or tenants in common *or tenants by the entirety* may be voted by any of such persons. If more than one of such tenants votes such shares, the vote shall be divided among them in proportion to the number of such tenants voting.

(emphasis added).

### C.

The Weih estate, not surprisingly, urges that this court's opinions in *Zella* and *Scott*, even if dicta, are nevertheless a correct analysis of the law and should be applied here to disallow the claimed tenancy by the entirety exemption in the Electronic Innovators stock and the Merrill Lynch account. The estate further argues that the fact that the General Assembly chose to prohibit automobiles from being registered as tenants by the entirety does not necessarily imply any view by the General Assembly as to the propriety of owning other types of personal property as tenants by the entirety. And finally, the estate argues that—since there is no anomaly in recognizing corporate stock which is purchased with the proceeds of tenancy by the entirety real estate as being titled in that form also—the corporation statutes cited by the debtor merely addresses the practical question of how the shares are to be titled upon the death of one of the tenants and who can vote it.

This court does not, contrary to the debtor's argument, find the language of Va.Code Ann. § 55–20 dispositive. That statute, as previously discussed, had the effect of abolishing *survivorship* between husband and

---

entirety can exist in any type of personal property. The issue in that case involved a levy by the sheriff, to collect a judgment against the husband, on personal property used in connection with a restaurant, bar and grill managed by the wife and located in a building owned by the husband and wife as tenants by the entirety. The Court, citing *Oliver*, stated that in Virginia personal property may be held by tenants by the entirety. However, because the wife had previously taken an inconsistent position that the property was actually owned by a third person, the circuit court found as a factual matter that

the personalty was owned as tenants in common. The court also explained that, unless personal property was acquired through the rents, profits, or proceeds of entireties property, "there must be an instrument of conveyance clearly establishing the right of survivorship."

4. Va.Code Ann. § 55–21 then provides an exception to the rule of § 55–20 "when it manifestly appears from the tenor of the instrument that the part of the one dying should then belong to the others."

wife with respect to both real and personal property unless an intent to create a survivorship interest was clearly expressed. It does not, however, address the question of whether the resulting survivorship interest is held as joint tenants[5] or as tenants by the entirety. With respect to real property, it is clear that an estate by the entirety is created. *Allen v. Parkey,* 154 Va. 739, 149 S.E. 615 (1929), *aff'd on reh'g,* 154 Va. 739, 154 S.E. 919 (1930); *Burroughs v. Gorman,* 166 Va. 58, 184 S.E. 174 (1936); *Zella,* 196 B.R. at 756. But whether the same would be true with respect to personal property is far from clear. The language of Va.Code Ann. § 55-20 has existed in substantially its present form since 1888. *Pitts,* 242 Va. at 258, 408 S.E.2d 903-04. At the time the statute was enacted, there was no common law recognition in Virginia of an estate by the entirety in personalty. Had the Supreme Court of Appeals in *Oliver* read the statute as the debtor urges, there would have been no need for the Court to rely on the "reasoning of the majority view" among other jurisdictions to justify the holding reached; the Court could simply have referred to the statute.

Similarly, this court is unpersuaded that the General Assembly, simply because it chose to expressly prohibit the titling of *automobiles* as tenants by the entirety, impliedly approved the titling of other types of personal property in that form. It could just as well be that the legislature's attention had been focused on the particular mischief that would result from recognizing an estate by the entirety in an automobile, and that the legislature simply had no occasion to consider whether a similar mischief would attend the ownership of other types of personal property that way—particularly as an automobile title is one of the few instruments of title that is controlled and issued by the Commonwealth.

As regards shares of corporate stock, however, it does seem reasonably clear that the General Assembly, in enacting Va.Code Ann. §§ 13.1-435 and 13.1-662, contemplated that such shares could be held by husband and wife as tenants by the entirety, and that the General Assembly saw no reason to qualify, restrict or prohibit the ownership of corporate stock in that form. Although it is true, as the Weih estate argues, that the statute does not in express terms *authorize* stock to be so titled but merely addresses the consequences of such form of ownership, nevertheless given the broad language in *Oliver*—"[W]e ... hold that in this State personal property as well as realty may be held by a husband and wife as tenants by the entirety," 204 Va. at 126, 129 S.E.2d at 663—the General Assembly may have felt that there was no need to expressly authorize a form of property ownership that had seemingly already been recognized by the courts. Although the question is not free from doubt, it seems most likely that the General Assembly did assume that stock could, as a general matter, be titled as tenants by the entirety. Accordingly, this court concludes that under Virginia law shares of corporate stock may be held by a husband and wife as tenants by the entirety.[6]

### D.

This holding does not fully dispose of the objection currently before the court. In order to create a tenancy by the entireties, it is necessary that the property interest so created satisfy the five common-law "unities": the unities of interest, title, time, possession, and marriage. *Wolfe v. Sprouse,* 183 B.R. 739, 741 (W.D.Va.1995). Additionally, under Va.Code Ann. § 55-21, a tenancy by the entireties cannot result unless "it manifestly appears from the tenor of the instrument that it was intended the part of the one dying should then belong to the [other]." In *Sprouse,* the district court held that promissory notes received from the sale of the husband's separate property were not owned

---

**5.** In Virginia, a joint tenancy is subject to partition by a judgment lien creditor of one of the joint tenants. *Jones v. Conwell,* 227 Va. 176, 314 S.E.2d 61 (1984).

**6.** Because a brokerage account consisting principally of shares of corporate stock is sufficiently allied to corporate stock, the court concludes that the same rule would apply with respect to the Merrill Lynch account. The issue not being before it, the court expresses no view with respect to other types of financial accounts.

as tenants by the entirety when the notes were made payable "to Austin B. Sprouse and Mary R. Sprouse, or the survivor" and lacked "even the hint of a marital relationship." Although there was extrinsic evidence that Mr. and Mrs. Sprouse were married at the time the notes were executed, the court held that the marital relationship had to be stated on the face of the notes in order to create a tenancy by the entirety. It is true that in *Pitts* the Virginia Supreme Court held that notes made payable "to the order of GEORGE G. PITTS and ELLEN O. PITTS"—with no words denoting either a marital relationship or survivorship—were owned as tenants by the entireties, but the promissory notes in that case, explained the court, were the proceeds of tenancy by the entireties real estate, and did not "*create* a tenancy by the entirety" but were merely "memorials of a chose in action, *the corpus of such an estate, one that arose by rule of law.*" *Pitts,* 242 Va. at 260, 408 S.E.2d at 904 (emphasis added). In the present case, by contrast, the Electronic Innovators stock and the Merrill Lynch account are not simply the "memorials" of a tenancy by the entireties that already existed in real estate, and the exception enunciated in *Pitts* does not apply.

That leaves the question of whether the phrase, "as tenants by the entirety"—or the abbreviation "ATBE"—appended to the names of the debtor and his wife are sufficient to establish the five common-law unities necessary for the creation of a tenancy by the entireties. Clearly, had the share certificate or the account stated that the owners were "John Massey and Kyle Massey, *husband and wife,* tenants by the entirety *with the common law right of survivorship,*" the creation of a tenancy by the entirety would not be in doubt. The question is whether the phrase "tenants by the entirety," standing alone, is sufficient to express both the unity of marriage and the right of survivorship. No reported Virginia case appears to have decided this issue. However, Black's Law Dictionary defines tenancy by the entirety as "a tenancy which is created *between a husband and wife* and by which together they hold title to the whole *with right of survivorship so that, upon death of either,* [the] *other*

*takes* [the] *whole* [.]" Black's Law Dictionary, 1465 (6th ed.1990) (emphasis added). Given that very clear and unambiguous definition, it would appear that the words "tenants by the entirety" manifestly express both the marital relationship and the intent to create a right of survivorship. Accordingly, the court holds that the share certificates and brokerage account satisfy the formal requirements for the creation of a tenancy by the entirety.

## V.

█ For the foregoing reasons, the court concludes that the 1,000 shares of Electronic Innovators stock and the Merrill Lynch brokerage account are held by the debtor and his non-debtor wife as tenants by the entirety and are therefore exempt under § 522(b)(2)(B), Bankruptcy Code, subject to the right of the trustee (a) to bring a timely action to avoid the transfers by which the tenancies by the entirety were created and (b) to administer the assets for the benefit of any joint creditors. A separate order will be entered consistent with this opinion allowing the exemptions and reserving for subsequent hearing the valuation of the 400 shares of Electronic Innovators stock not titled as tenants by the entirety.